IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHEILA NICHOLSON, and<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS | ) | |
| Plaintiffs, | ) | No. 05-1259L |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, United States of America, and for the reasons set forth in the attached Memorandum in Support respectfully moves this Court to grant Summary Judgment to Defendant dismissing Plaintiffs' Complaint pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). As the Attached Memorandum shows, there are no genuine issues of material fact, and Defendant, the United States of America, is entitled to judgment as a matter of law.

Respectfully Submitted this 30th Day of October, 2006.

**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

s/ Fred R. Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SHEILA NICHOLSON, and<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-1259L<br><br>Hon. Lawrence M. Baskir |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.

# TABLE OF CONTENTS


I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1

A. Plaintiffs' Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1

B. Historical Involvement by the U.S. Army Corps of Engineers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2

C. Hurricane Katrina . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7

A. Plaintiffs Have Failed to State a Claim for a Fifth Amendment Taking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7

B. The Involvement of the Corps with the Levees that Failed was Very Limited . . . . . . . . . . . . . . . . . . . . . . . . . . *8

C. A Claim That the Corps's Construction of Flood Walls Was Defective As A Matter of Law Sounds Only in Tort . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11

D. Hurricane Katrina, An Extraordinary Natural Phenomenon, Was the Cause of Plaintiffs' Damage . . . . . *17

E. Plaintiffs' Claims That The Corps Failed To Construct A Fully Protective Hurricane Project Are Not Cognizable In This Court . . . . . . . . . . . . . . . . . . . . . . . . . . *20

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23

# TABLE OF AUTHORITIES

## CASES

Baird v. United States,
5 Cl. Ct. 324 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Banks v. United States,
69 Fed. Cl. 206 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15, *16

Bartz v. United States,
224 Ct. Cl. 583, 633 F.2d 571 (Ct. Cl. 1980) . . . . . . . . . . . . . . . . . . . 15

Berenholz v. United States,
1 Cl. Ct. 620 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18, *19, *20

Brace v. United States,
72 Fed. Cl. 337 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15, *16

Burt v. Makita USA, Inc.,
212 F.Supp.2d 893 (N.D.Ind. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 17

Celotex v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6

Dolan v. City of Tigard,
512 U.S. 374 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

First English Evangelical Lutheran Church of Glendale v.
Los Angeles County,
482 U.S. 304 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Forest Properties v. United States,
177 F.3d 1360 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Grajales-Romero v. American Airlines, Inc.,
194 F.3d 288 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kaiser Aetna v. U.S.
444 U.S.164 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21

Laughlin v. United States,
22 Cl. Ct. 85 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12

Leeth v. United States,
22 Cl. Ct. 467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15

Lujan v. National Wildlife Federation,
497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6

Moden v. United States,
404 F.3d 2335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . *13, *14, *16, *17

Napier v. F/V Deesie, Inc.,
454 F.3d 61 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Oklahoma v. Atkinson,
313 U.S. 508 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10

Pennsylvania Coal Co. v. Mahon,
260 U.S. 393 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ridge Line v. United States,
346 F.3d 1346 (Fed.Cir. 2003) . . . . . . . . . . . . . . . . . . . *13, *14, *16

Teegarden v. United States,
42 Fed. Cl. 252 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . *18, *19

United States v. Craft,
535 U.S. 274 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21

United States v. 564.54 Acres of Land,
441 U.S. 506 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

United States v. Dickinson,
331 U.S. 745 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Pewee Coal Co.,
341 U.S. 114 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**CONSTITUTIONS**

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12

**STATUTES**

28 U.S.C. § 1491(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12
33 U.S.C. § 702 ( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RULES**

RCFC 9(h)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7
RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5, *6

**OTHER AUTHORITIES**

Black Law Dictionary 234 (8th Ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . *17

## EXHIBITS

| Exhibit Letter | Document Name |
|---|---|
| A | Declaration of Lieutenant Colonel Murray P. Starkel, Deputy District Engineer for the New Orleans District of the United States Army Corps of Engineers, sworn October 30, 2006 |
| B | National Hurricane Center, Tropical Cyclone Report, Hurricane Katrina, published December 20, 2005 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHEILA NICHOLSON, and<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS | ) | |
| Plaintiffs, | ) | No. 05-1259L |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, United States of America, and respectfully moves this Court to grant Summary Judgment in Defendant's favor pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). As we demonstrate below, there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law.

## I. FACTUAL BACKGROUND

### A. Plaintiffs' Allegations.

This case was filed on December 3, 2005 by three alleged residents and real property owners in the city of New Orleans, Louisiana. These

Plaintiffs claim that “as a result of the flooding in New Orleans [from Hurricane Katrina] due to the defective design and construction of . . . flood walls, the property values of . . . [Plaintiffs] have been severely impacted in a negative way.” Compl. at ¶ 12. Plaintiffs further allege that “the property values of property owned by [Plaintiffs] will continue to suffer unless and until the flood walls and levees are constructed in a manner to withstand a Category 5 hurricane and storm surge,” and that “if flood walls capable of withstanding a Category 5 hurricane are not constructed, then the property values will never return to the pre-Katrina values . . . Even constructing walls capable of withstanding a Category 5 hurricane may not restore the full value to the properties owned by the [Plaintiffs].” Compl. at ¶¶ 18-19.

Plaintiffs fail to specify any particular cause of action in their Complaint. Rather, they allege only that the “the decision not to rebuild and/or replace the levee system to withstand a Category 5 hurricane constitutes a taking under the appropriate provisions of the United States Constitution and related legislation.” Compl. at ¶ 51. As we demonstrate below, Plaintiffs have not alleged a claim within the jurisdiction of this Honorable Court and Defendant is entitled to judgment as a matter of law.

B. <u>Historical Involvement by the U.S. Army Corps of Engineers.</u>

As the attached declaration of Lieutenant Colonel ("LTC") Murray P. Starkel, the Deputy District Engineer for the New Orleans District, demonstrates, the Corps' involvement in *hurricane protection* for the City of New Orleans has been limited and of relatively recent origin. <u>See</u> Declaration by LTC Starkel at ¶¶ 4 through 8, attached as Defendant's Exhibit A. Levees to protect New Orleans from flooding from a storm surge resulting from hurricanes or tropical events have long been in existence, but the construction of those levees and the responsibility of operating and maintaining those levees after their construction was in many cases undertaken by State and Local agencies, not by the Corps itself. As a matter of indisputable fact, the construction of the levees along the 17th Street, London Avenue, and Inner Harbor Navigation Canal ("IHNC") (hereafter "the three canals") [the latter being incorrectly referred to by Plaintiffs in their Complaint as the "Industrial Avenue Canal"] was done by local private and governmental entities (for various reasons such as the provision of alternative parallel right-of-way in association with railroad construction, as a site for the disposal of materials excavated during excavation of the canals, etc., with some of the earth works being later adapted by local authorities to local flood control uses), and not by the

Corps. The genesis of the initial excavation of the three canals varied from being a component of railroad construction (17th Street Canal), a privately constructed avenue of local commerce (London Avenue Canal), and as a toll facility constructed by local government to allow navigation between the Mississippi River and Lake Pontchartrain (IHNC). Later, the 17th Street and London Avenue Canals were adapted by local governmental authorities to serve as interior drainage facilities, a use continued by local governments to the present. The IHNC and its lock were incorporated into the Federal navigation project, the Gulf Intracoastal Waterway (GIWW) and continues to serve as apart of that navigation system to the present.

Plaintiffs seem to confuse two different components of the flood protection system along the canals in question. The earthen base of this system is called a levee. As discussed above, the levees in question here were built by State and Local entities, not the Corps. See Def's Ex. A at ¶¶ 7, 15 and 19. It is indisputable that the Corps' involvement on the canals in question was primarily limited to the design and placement of flood walls on top of some of these already existing levees. Id. at ¶¶ 7, 15 and 19.

C. Hurricane Katrina.

Plaintiffs' factual account does not do justice to Hurricane Katrina

which was "an extraordinarily powerful and deadly hurricane that carved a wide swath of catastrophic damage . . . ." National Hurricane Center, Tropical Cyclone Report, Hurricane Katrina (Dec. 20, 2005) at 1, attached without tables as Defendant's Exhibit B. As it passed through the open waters of the Gulf of Mexico, Hurricane Katrina was rated as a Category 5 storm on the Saffir-Simpson hurricane scale, the highest category into which a storm can be placed. Id. At the time Hurricane Katrina struck New Orleans it was still a powerful "high-end Category 3 hurricane . . . ." Id. at 6. The sheer size and strength of the storm created a storm surge of ten to fourteen feet along the southern shore of Lake Pontchartrain, and into the three canals at issue in this case. Id. at 9. This was a storm surge level much higher than the design hurricane against which Congress authorized the Corps to provided hurricane protection.

II. STANDARD OF REVIEW

Under RCFC 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court of the United States has held in

Celotex v. Catrett, 477 U.S. 317 (1986), and in Lujan v. National Wildlife Federation, 497 U.S. 871 (1990) that when a motion for summary judgment is made and supported as provided by the Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by Rule, must set forth specific facts showing that there is a genuine issue for trial. The Supreme Court also held that entry of judgment is mandated against a party who fails to make a showing essential to that party's case and on which that party will bear the burden of proof at trial. Lujan, 497 U.S. at 884.

In Lujan, the Court said "Celotex made clear that Rule 56 does not require the moving party to *negate* the elements of the nonmoving party's case; to the contrary, 'regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment as set forth in Rule 56(c) is satisfied.'" Id. at 885 (quoting Celotex, 477 U.S. at 323). Therefore, in the present case, unless the Plaintiffs can present evidence to establish each essential element of their case, elements upon which they have the

burden of proof, summary judgment must be entered against them. As we now show, as a matter of law no such showing can be made by Plaintiffs.

## III. ARGUMENT

### A. Plaintiffs Have Failed to State a Claim for a Fifth Amendment Taking.

Plaintiffs in their complaint fail to adequately plead any facts that would give rise to a takings claim under the Fifth Amendment. Neither have they even tied their claims of flooding to their own properties and clearly have not met the requirements of RCFC 9(h)(7). After generally describing without any detail the effects of Hurricane Katrina on New Orleans, Plaintiffs claim that "as a result of the collapse of the flood control walls . . . water from Lake Pontchartrain flooded major parts of the City of New Orleans", Compl. at ¶ 41, and that "the flood waters rose, in some cases to twelve feet or more and submerged either completely or partially the majority of the homes and buildings in the City of New Orleans," id. at ¶ 42, but they never allege that the properties purportedly owned by Plaintiffs were flooded or suffered any physical damage whatsoever. See id. They go on to claim that "the design and construction of the flood walls was defective," id. at ¶ 46 and that "the Defendants have chosen not to repair and rebuild the levee system to withstand a Category 5 hurricane," id. at ¶

48, and that "as a result, the property values for real property in the City of New Orleans have been significantly reduced." Id. at ¶ 49. As we demonstrate below, even if Plaintiffs could adduce evidence to support these allegations, they would still not be able to prove every element necessary to a successful Fifth Amendment taking claim. Accordingly, Defendant is due judgment as a matter of law.

B. The Involvement of the Corps with the Levees that Failed was Very Limited.

Throughout their Complaint, Plaintiffs continually misstate and misrepresent the role that the United States – acting through the Army Corps of Engineers (hereinafter the "Corps") – played in the hurricane protection system in the City of New Orleans and its surroundings. Plaintiffs are completely mistaken in alleging that the Corps is "charged with the responsibility to maintain adequate flood control for the United States of America." Compl. at ¶33. They also err in claiming that the "levee system around the Mississippi River is and has been under the jurisdiction and control of the Defendant." Id. at 35. This statement is both wrong and irrelevant. While there is a levee system around the Mississippi River, it is not all under the control of the Corps, and more importantly, the levees that Plaintiffs allege to have failed as the basis for their claims in this

case are not a part of that levee system. They next allege in Paragraph 36 that "the [Corps] ha[s] designed and constructed flood control walls along the 17th Street Canal, London Avenue Canal, and the Industrial Avenue Canal", [which should be referred to as the Inner Harbor Navigation Canal], but this is wrong in several regards. The Corps did no such construction for the 17th Street Canal. The Corps' work there was limited to capping of existing locally constructed flood walls. Plaintiffs are also wrong in alleging that these "walls were supposed to be capable of withstanding a Category 3 hurricane and storm surge." Compl. at ¶ 37. Rather, the walls were designed, in accordance with the 1965 statutory project authority, Public Law 89-298, to protect against the storm surge resulting from the Lake Pontchartrain and Vicinity project design hurricane, which, in the case of the allegedly defective Lake Pontchartrain and Vicinity project flood walls, constitutes a hypothetical storm with a forward speed of 6 knots, maximum wind velocity of 100 miles per hour, a central pressure of 27.6 inches, and radius of 30 nautical miles. See Def's Ex. A at ¶ 16. [1/] While the Corps certainly has been given the authority to construct many projects for flood and hurricane protection, the Congress has never charged it or authorized

[1/] The Saffir Simpson scale, which is the source of the rating referred to by Plaintiffs was not adopted until four years after the project was authorized.

it to construct projects of any significant kind on its own *without prior Congressional approval*. It certainly has not provided authority or authorization for the Corps to make a decision to build new levees to protect New Orleans from a Category 5 hurricane. See Id. at ¶ 18. That authority belongs only to the Congress and to date the Congress has not made any such decision. [2/] Plaintiffs taking claim, based on a supposed entitlement to such protection of its property values is not founded in law or fact and thus cannot be heard by this court. This claim is absolutely inconsistent with Congressional Acts such as those which disclaim any liability to the United States for damage from floods or flood waters, see 33 U.S.C. § 702 (c), and Counsel for the United States has found no case law which supports such a claim in this or other Courts.

The Congress of the United States has not given the Corps the authority or responsibility to maintain flood control and hurricane protection throughout the entire United States. While the Congress has approved particular flood control and hurricane protection projects, including many for

---

[2/]Article IV, Section 3, Clause 2 of the Constitution gives to the Congress the Power to dispose of and make all needful Rules and Regulations with respect to Property of the United States, and the Commerce Clause of the Constitution grants to the Congress the Power to enact legislation as to the use and protection of Navigable Waters of the United States. See Oklahoma v. Atkinson, 313 U.S. 508 (1941).

the Mississippi River Basin, it has not given the unlimited authority seemingly alleged by Plaintiffs. Further, the Congress, in authorizing particular projects, distinguishes between "flood control" and "hurricane protection" projects.[3/]

C. A Claim That the Corps's Construction of Flood Walls Was Defective As A Matter of Law Sounds Only in Tort.

The Complaint in this case is very imprecise as to exactly what causes of action Plaintiffs are asserting. Nonetheless, it is clear that to the extent Plaintiffs are asserting a claim for damages based upon the allegedly defective design of flood walls by the Corps, such a claim can only be made under the law of torts. The Tucker Act, 28 U.S.C. § 1491(a), confers jurisdiction upon this Court to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied

---

[3/] Flood Control or Flood Damage Reduction projects are generally defined in Congressional authorization as projects designed and constructed to have appreciable and dependable effects in preventing damages caused by irregular and unusual rises in water lever, but do not include projects designed to protect against salt water intrusion or tidal fluctuations, channel alignment, navigation, fish and wildlife, recreation and land reclamation or land erosion. Hurricane protection and storm damage reduction projects constitute a type of flood control project that is designed and constructed to prevent damage and flooding from a hurricane or tsunami and their associated storm surges.

contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (discussing the Tucker Act). See also Columbia Basin Orchard, 132 F. Supp. 707, 710 (Ct.Cl. 1955) ("An accidental or negligent impairment of the value of property is not a taking, but, at most, a tort, and as such is not within the jurisdiction conferred on this court by Congress."). Accordingly, to the extent Plaintiffs' claims sound in tort, they must be dismissed because such claims are outside of this Court's jurisdiction.

The Takings Clause of the Fifth Amendment provides, in relevant part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. A "taking" can occur directly through the exercise of the governmental power of Eminent Domain, United States v. 564.54 Acres of Land, 441 U.S. 506 (1979), or indirectly, when the government acts in a manner which causes an inverse condemnation, First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 315 (1987). Inverse condemnation, in turn, can occur by direct physical invasion (referred to as a 'physical taking'), United States v. Pewee Coal Co., 341 U.S. 114 (1951), or by

virtue of the government's restriction on land use which goes "too far," referred to as a regulatory taking, Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). A physical taking occurs "when the government itself occupies the property or 'requires the landowner to submit to physical occupation of its land.'" Forest Properties v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999).

As noted above this Court is one of limited jurisdiction. If Plaintiffs' claims properly allege a Fifth Amendment takings claim, this Court may hear the case. Moden v. United States, 404 F.3d 2335, at 1342 (Fed. Cir. 2005). If, however, Plaintiffs' Complaint raises only claims arising in tort, it must be dismissed. See id. The analysis used to determine whether a claim sounds in tort or, in fact, states a valid Fifth Amendment takings claim is comprised of two parts. Ridge Line v. United States, 346 F.3d 1346, 1355 (Fed.Cir. 2003). The first step in this analysis requires the Court to evaluate whether the flooding of Plaintiffs' property was "the direct, natural or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action. . . ." Id. The second step of this inquiry requires the Court to determine whether the alleged government action "appropriate[d] a benefit to the government at the expense of the

property owner, or at least preempt[ed] the owner's right to enjoy his property for an extended period of time rather than merely inflict[ing] an injury that reduces its value." Id. at 1356. It is Plaintiffs' burden to establish that both of these elements are met. Moden, 404 F.3d at 1342. On the facts of this case, they cannot prove either element.

Under the first prong of this two-part inquiry, the Court must determine whether any damage done to Plaintiffs' property by Hurricane Katrina's storm surge was the "direct, natural, or probable result" of a government action. Ridge Line, 346 F.3d at 1356. To meet this standard Plaintiffs must show not only that their injuries were in fact caused by Defendant's action, but also that Defendant "should have predicted or foreseen the resulting injury." Moden, 404 F.3d at 1343.

The first strand of the direct, natural and probable test requires "proof of causation – [i.e.,] that the government act was the likely cause of the injury." Banks v. United States, 69 Fed. Cl. 206, 212 (2006). Accordingly, "this court and the Court of Claims have denied recoveries in cases where the subject property was previously prone to natural flooding." Brace v. United States, 72 Fed. Cl. 337, 362 (2006) (discussing the direct, natural or probable requirement). See also Leeth v. United States, 22 Cl. Ct. 467,

485; Laughlin v. United States, 22 Cl. Ct. 85, 102 (1990); Bartz v. United States, 224 Ct.Cl. 583, 633 F.2d 571 (Ct. Cl. 1980).

In the present case, the causation requirement cannot be met because the sole cause of the alleged taking was a natural event, Hurricane Katrina. Plaintiffs have not alleged and cannot show that the United States or its agents had any control over or connection whatsoever to that event. In the takings cases with which this Court is familiar, any taking has been predicated upon situations where the government had some actual control over the flood waters that caused the damage complained of - either by impounding river flows, releasing water from federal projects or by purposefully diverting water. See, e.g., United States v. Dickinson, 331 U.S. 745 (1947) (impoundment of water behind a federally constructed dam caused erosion on claimants' property); Baird v. United States, 5 Cl. Ct. 324 (1984) (operation of structures related to a federal dam alleged to have resulted in a taking). In the instant case, however, no such control or involvement of the federal government existed. Rather, the hurricane spawned a huge flood surge which swept over New Orleans. The simple, undisputed fact is that the damage complained of by the Plaintiffs was not due to any act or omission of the United States or in

any manner controllable by any action of the United States.

On the facts of this case, the inescapable conclusion is that the flooding of property in New Orleans in 2005 was caused by a hurricane. It follows that Plaintiffs have not, and cannot, show that any flooding of their property was directly caused by any act of the United States. Banks, 69 Fed. Cl. at 212; Brace, 72 Fed. Cl. at 362. Accordingly, Plaintiffs cannot show that their claims are due treatment under takings law rather than tort law, or that the jurisdiction of this Court is appropriate and their claims must fail as a matter of law. Ridge Line, 346 F.3d at 1356; Moden, 404 F.3d at 1342.

The second strand of the "direct, natural or probable" component of the tort-taking inquiry is aimed at determining whether Plaintiffs' injuries were foreseeable. Banks, 69 Fed. Cl. at 212. This strand requires Plaintiffs to prove "'that the government should have predicted or foreseen the resulting injury' – [i.e.,] that the injury was the likely result of the government act." Id. (quoting Moden, 404 F.3d at 1343). The Federal Circuit further advised in Moden that "injury may not be foreseeable if an intervening cause breaks the chain of causation." 404 F.3d at 1343.

An intervening cause is "[a]n event that comes between the initial

event in a sequence and the end result . . . ." Black's Law Dictionary 234 (8th Ed. 2004). Generally, an intervening cause must be unforeseeable in order to cut off a defendant's potential liability. See, e.g., Napier v. F/V Deesie, Inc., 454 F.3d 61 (1st Cir. 2006); Grajales-Romero v. American Airlines, Inc., 194 F.3d 288 (1st Cir. 1999); Burt v. Makita USA, Inc., 212 F.Supp.2d 893 (N.D.Ind. 2002). In the present case, Hurricane Katrina, due to its huge size and almost unprecedented intensity was an unforeseeable intervening cause that precludes the validity of Plaintiffs' claims.

D. Hurricane Katrina, An Extraordinary Natural Phenomenon, Was the Cause of Plaintiffs' Damage.

Hurricane Katrina was one of the largest and most powerful recorded storms ever to hit the United States. Def's Ex. B at 3. At the time it rolled across the Gulf of Mexico pushing a storm surge toward Louisiana, Hurricane Katrina was the fourth most intense storm ever recorded in the Atlantic Ocean. Id. at 6. Additionally, the "massive storm surge produce by Katrina, even though it had weakened from Category 5 to Category 3 at landfall in Louisiana, can be generally explained by the huge size of the storm." Id. at 9 (emphasis added). In other words, this was not an ordinary or foreseeable storm.

In Teegarden v. United States, a group of plaintiffs alleged their timber lands had been taken in violation of the Fifth Amendment as a result of decisions made by the United States Forest Service to protect other "higher priority" areas when combating a wild fire. 42 Fed. Cl. 252 (1998)(quoting Berenholz v. United States, 1 Cl. Ct. 620, 626 (1982)(internal quotations omitted). Granting summary judgment in Teegarden to the United States, this court held that "[i]n the context of a claim for inverse condemnation, damages resulting from a random event induced more by an extraordinary natural phenomenon than by Government interference cannot rise to the level of a compensable taking even if there is permanent damage to property partially attributable to Government activity." Id. at 257. Here, as in Teegarden, Plaintiffs' damages resulted from "an extraordinary natural phenomenon." Due to its "huge size" and nearly unprecedented strength, Hurricane Katrina was, like the fire in Teegarden, an "extraordinary natural phenomenon." See Def's Ex. B at 6 (noting that Hurricane Katrina was the fourth most intense storm ever recorded). It follows that, although Plaintiffs have suffered "permanent damage" to their property, such damage is not compensable as a taking because the damage was "induced more by an extraordinary natural

phenomenon than by Government interference . . . ." Teegarden, 42 Fed. Cl. at 257. Accordingly, Defendant is due judgment as a matter of law.

Plaintiffs in Teegarden also alleged that the United States' failure to act to protect their property effected a taking of their timber land. Id. Plaintiffs here have made a similar claim, alleging that their property was taken by the United States failure to build Category 5 protection structures in the New Orleans area. Compl. at ¶ 51. "Despite the novelty" of this theory, the Teegarden court rejected the plaintiffs' claim saying "plaintiffs do not cite any cases in which compensation has been awarded for an omission or failure to act on the part of the Government. It also bears noting that claims involving an omission or failure to act sound in tort and, therefore, necessarily fall beyond the jurisdiction of the Court of Federal Claims." Teegarden, 42 Fed. Cl. at 257 n. 4. Plaintiffs' taking claim based on the alleged failure of the United States to act by building a Category 5 hurricane protection system should similarly be rejected as being outside the jurisdiction of this Court.

E. Plaintiffs' Claims That The Corps Failed To Construct A Fully Protective Hurricane Project Are Not Cognizable In This Court.

Plaintiffs primarily claim that their property has been taken because

the Corps chose not to repair and rebuild the New Orleans levee systems to a level sufficient to withstand a Category 5 hurricane. Compl. at ¶ 51. This claim is based upon an unfounded assertion in Paragraph 48 of the Complaint that the Corps chose not to repair or rebuild the levee system. Plaintiffs, however, cannot offer any evidence or proof in support of this claim.

First, it must be clear that the Corps does not, and did not, have the authority, power or ability to independently make the decision to ring New Orleans with protection structures sufficient to combat a Category 5 hurricane. Rather, under the Constitution of the United States, such decisions are the prerogative of the United States Congress and that body has never granted the Corps that authority.[4/] It is equally clear that the Congress has never made any decision as to the construction of a hurricane protection system for New Orleans to withstand a Category 5 Hurricane , nor has it ever been under any legal obligation to make any such decision. Plaintiffs simply cannot be heard or allowed to assert a claim based upon an alleged compensable property interest in full protection against damage from a Category 5 Hurricane.

---

[4/]See footnote 2 above.

The Supreme Count, in discussing what constitutes a "property" right, has normally looked to state law and has referred to a "bundle of sticks" as a "common idiom" for a "collection of individual rights which, in certain combinations, constitute property." United States v. Craft, 535 U.S. 274, 278 (2002). In that case Justice O'Connor wrote: "Michigan law grants a tenant by the entirety some of the most essential property rights: the right to use the property, to receive income produced by it and to exclude others from it. Id. at 280 (citing Dolan v. City of Tigard, 512 U.S. 374 (1994); Kaiser Aetna v. United States, 444 U.S.164 (1979)). No case we are aware of, however, has ever expanded the "bundle of sticks" to include a right to full protection from natural events as these Plaintiffs now attempt to assert. The bundle of sticks is closely related to uses of property owned by a plaintiff, not to claims of rights to have its ownership protected by the federal government. No such right can be shown to exist on the facts of the present case, and accordingly, Plaintiffs claims to such protection must, as a matter of law, be rejected.

It is further obvious that this claim is not based on any prior legally authorized action of the Corps, but rather on an alleged failure of the Corps to take such an action in the future as is obvious from the use of the terms

"rebuild or replace" an undefined "levee system". Here, as we have shown, the Corps was not the agency that built the levees along the three canals that were the source of the flooding of which Plaintiffs complain. Decl. at ¶ 7, 15 and 19. The Corps instead added flood walls atop portions of the locally constructed levees, or in the case of the flood walls along the 17th Street Canal capped an existing locally constructed flood wall, to add to their protective capacity. In the case of the flood walls adjacent to the Orleans and London Avenue Canals, the Corps took such action only after the Corps' initial "barrier" plan was enjoined by the courts and, after the Congress later rejected the Corps' "high level" plan to put storm gates at the confluence of those canals and Lake Pontchartrain. Decl. at ¶¶ 8 through 15. Plaintiffs, however, demand a replacement of the entire [but undefined] "levee system" by the Corps or that they be paid compensation for any lost property value which may result from the absence of such a system. Compl. at ¶¶ 48, 51.[5/] Plaintiffs can point to neither facts nor law to support their claim that the alleged failure of the Corps to construct a system not authorized by Congress nevertheless renders the United States liable for a taking of private property under the Fifth Amendment. As a

---

[5/] Any Injunctive relief is, of course, not available in the Court of Federal Claims. See 28 U.S.C. § 1491.

matter of law, Plaintiffs have no protected property right to such protection and accordingly, Defendant is entitled to summary judgment dismissing the Complaint.

## IV. CONCLUSION

For the reasons above stated, Defendant requests this honorable Court to grant summary judgment in its behalf and to dismiss the Complaint filed herein with prejudice as to its refiling.

Respectfully Submitted this 30th day of October, 2006.

**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

s/ Fred R. Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.