IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHEILA NICHOLSON,<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS, | ) | |
| Plaintiffs, | ) | No. 05-1259L |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

---

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.

# TABLE OF CONTENTS


I. DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Plaintiffs' Opposition Supports Defendant's Argument That The Claims in This Suit Sound, At Most, In Tort . . . . . . . 3

1. Plaintiffs Have Not Supplied Facts that Would Give Rise to Fifth Amendment Takings Claim . . . . . . . . . 7

2. Any Governmental Interference Was Not Substantial or Frequent . . . . . . . . . . . . . . . . . . . . . . . . . 12

3. Plaintiffs' Erroneous Construction of the Causation Factor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. Plaintiffs' Opposition Memorandum Fails to Meet Their Burden of Proof As to Each Element of Their Claim . . . . . . . 16

II. DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

Alost v. United States,
73 Fed. Cl. 480 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B&G Enterprises, Ltd. v. United States,
43 Fed. Cl. 523 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

Banks v. United States,
69 Fed. Cl. 206 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

Barnes v. United States,
210 Ct. Cl. 467, 538 F.2d 865 (1976) . . . . . . . . . . . . . . . . . . . . . . 5, 12

Berenholz v. United States,
1 Cl. Ct. 620 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Cotton Land Co. v United States,
109 Ct. Cl. 816, 75 F.Supp. 232 (1948) . . . . . . . . . . . . . . . . 15, 17, 19

Eyherabide v. United States,
170 Ct. Cl. 598, 345 F.2d 565 (1965) . . . . . . . . . . . . . . . . . . . . . . . 12

Last Chance Mining Co. v. United States,
12 Cl. Ct. 551 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lujan v. National Wildlife Federation,
497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . 3, 7, 10-12, 14

Pendleton v. United States,
47 Fed. Cl. 480 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Singleton v. United States,
6 Cl. Ct. 156 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Teegarden v. United States,
42 Fed. Cl. 252 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Tri-State Materials Corp. v. United States,
213 Ct. Cl. 1, 550 F.2d 1 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wilfong v. United States,
202 Ct. Cl. 616, 480 F.2d 1326 (1973) . . . . . . . . . . . . . . . . . . . . 13, 14

**STATUTES**

28 U.S.C. 1346(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

**OTHER AUTHORITIES**

Katrina Canal Breaches Consolidated Litigation,
http://www.laed.uscourts.gov/CanalCases/CanalCases.htm
(last visited February 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Katrina Canal Breaches Consolidated Litigation,
http://www.laed.uscourts.gov/CanalCases/Intro.htm
(last visited February 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

| Exhibit Letter | Document Name |
|---|---|
| A | Declaration of Lieutenant Colonel Murray P. Starkel, Deputy District Engineer for the New Orleans District of the United States Army Corps of Engineers, sworn October 30, 2006 |
| B | National Hurricane Center, Tropical Cyclone Report, Hurricane Katrina, published December 20, 2005 |
| C | Declaration of Lieutenant Colonel Murray P. Starkel, Deputy District Engineer for the New Orleans District of the United States Army Corps of Engineers, sworn February 1, 2007 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHEILA NICHOLSON,<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1259L<br><br>Hon. Lawrence M. Baskir |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America, hereby submits its Reply Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment. Defendant respectfully submits that this Court must grant judgment to Defendant because, as a matter of law and indisputable fact, Plaintiffs' claims sound, at most, in tort and do not state a claim within the jurisdiction of this Court.

On October 30, 2006 Defendant filed its Motion for Summary

Judgment, and a Memorandum in support thereof ("Def's Mot."), pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). (Docket No. 16). On January 12, 2007, Plaintiffs filed a combined Cross Motion for Summary Judgment and an Opposition ("Pltfs' Opp."). Defendant herein Replies to both Plaintiffs' Opposition and and their purported Cross Motion for Summary Judgment.

## I. DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In their Complaint and Opposition memorandum Plaintiffs continue to fail to identify any facts that give rise to a takings claim under the Fifth Amendment. Rather the undisputed facts of this case establish that Plaintiffs have, at most, alleged only a tort claim for the flooding of their property.

Plaintiffs have identified two equally unavailing theories under which they seek compensation. First, Plaintiffs claim that they seek compensation for "the reduction in property values attributable to the defectiveness of the Corps' flood wall design." Compl. at ¶ 49; Pltfs' Opp. at 16. Second, Plaintiffs assert that they are due compensation for the damage done to their properties by Hurricane Katrina's flood waters. Pltfs' Opp. at 17.

### A. Plaintiffs' Opposition Supports Defendant's Argument That The Claims In This Suit Sound, At Most, In Tort.

Plaintiffs fail to meet their burden of proof under the rule that entry of judgment is mandated against a party who fails to make a showing essential to that party's burden of proof at trial. Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990). See Def's Mot. at 6. As we discussed in our opening memorandum, this Court is one of limited jurisdiction. Def's Mem. at 10. Accordingly, if either of Plaintiffs' claims properly allege a Fifth Amendment takings claim, this Court may hear their case. Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005). If, however, Plaintiffs' Complaint and Opposition raise only claims arising in tort, Plaintiffs have not carried their burden and Defendant is due judgment as a matter of law. See id.; Lujan, 497 U.S. at 884.

A simple reading of the Complaint in this case, and its further explication in the Opposition memorandum, leads to the inescapable conclusion that Plaintiffs' claims rely entirely on alleged failures - i.e. omissions - by the United States to adequately provide Plaintiffs protection from hurricane damages (including flooding due to hurricane winds and storm surge). There is no allegation of any affirmative action by a

governmental agency in Plaintiffs' takings claims. Rather, Plaintiffs either point to the "defective" design of flood walls, i.e. the failure to properly design flloodwalls, Compl. at ¶¶ 9, 10, 11, 12, 46; Pltfs' Opp. at 9, 12-14, or the failure to provide a hurricane protection system capable of withstanding a Category 5 hurricane. Compl. at ¶¶ 47-50; Pltfs' Opp. at 16-18.

Such claims, based on a failure to act, do not and cannot be held to state a takings claims under the Fifth Amendment which specifically calls for a defined government "action" as the basis for any such claims, and a failure to act is by definition not such an action. This court has discussed a similar claim of an alleged taking by inaction, saying:

> Plaintiff cites no precedent, however, for the proposition that the inaction of a regulatory body in carrying out its statutory duty... has ever been held to be a taking. . . The one common denominator in cases finding a taking is that there was a public purpose animating some affirmative action or statement, whether that purpose finds expression in a regulation for health and safety, a physical entry, a confiscation, or a land use restriction. This requirement is no more than a reflection of the fifth amendment itself, which is predicated on a taking for "*public use*".

Last Chance Mining Co. v. United States, 12 Cl. Ct. 551, 556-57 (1987) (underlined emphasis added). Previous decisions of this Court have also made clear that "the Government must take some affirmative action for a

takings claim to be successful." B&G Enterprises, Ltd. v. United States, 43 Fed. Cl. 523, 526-27 (1999). See also Alost v. United States,73 Fed. Cl. 480 (2006) (noting that a "plaintiff seeking to establish a government taking of an easement by flooding must also demonstrate. . . that there was a 'governmental act . . .'")(quoting Barnes v. United States, 538 F.2d 865, 870 (Ct. Cl.1975)) (emphasis added); Pendleton v. United States, 47 Fed. Cl. 480 (2000) (rejecting a takings claim in the context of a state-federal program alleged to have effected a taking because the plaintiffs failed to identify an "affirmative action" by the federal government "sufficient to support a takings claim under the Fifth Amendment."). Accordingly, to the extent Plaintiffs' claims rely on allegations that Defendant failed to properly design the floodwalls or failed to sufficiently protect Plaintiffs' property, Defendant is due judgment as a matter of law. These types of allegations fall squarely within the law of torts, and the Federal Tort Claims Act ("FTCA"), which specifically waives sovereign immunity for "acts and omissions" by Government employees. See 28 U.S.C. 1346(b)(1).

There is a second reason that Plaintiffs' defective design claims can be made only under the law of torts. The "defective design" to which Plaintiffs repeatedly refer, Compl. at ¶¶ 9, 10, 11, 12, 46; Pltfs' Opp. at 9,

12-14, is a creature of products liability law, which is itself a branch off the tort-law tree. See, e.g., Rest. (Third) of Torts: Products Liability at § 2.

We respectfully note that judgment for Defendant in this case will not prevent these three plaintiffs from obtaining judicial review of their claims. They can still file an administrative claim under the FTCA and if it is denied, file suit in the District Court in Louisiana. Many other similarly situated landowners in Louisiana have already done this. See Katrina Canal Breaches Consolidated Litigation, http://www.laed.uscourts.gov/CanalCases/Intro.htm (last visited February 6, 2007). This Court is requested to take judicial notice of the fact that there are now pending in the United States District Court for the Eastern District of Louisiana many hundreds of cases against the United States under the FTCA alleging that the United States is liable for damages from flooding due to Hurricane Katrina which have largely been consolidated before one judge. See id. The hundreds of attorneys representing several hundred claimants in those cases, as evidenced by the docket report in that matter,[1/] is strong evidence

---

[1/] Defendant has not provided a full copy of this docket sheet because it is approximately 600 pages in length. However, it is available on the Eastern District of Louisiana's Pacer website found at http://www.laed.uscourts.gov/CanalCases/CanalCases.htm (last visited February 6, 2007).

of the extent of that litigation. It is interesting to note, however, that none of those plaintiffs have sought recovery from the United States in this Court on Fifth Amendment takings grounds.

1. Plaintiffs Have Not Supplied Facts that Would Give Rise to a Fifth Amendment Takings Claim.

As discussed in our opening brief, Plaintiffs must prove that their injuries were in fact caused by a specific action of Defendant or its agencies. Def's Mot. at 14-15; Moden, 404 F.3d at 1343. This amounts to a requirement that the Plaintiffs show "that [a] government act was the likely cause of the[ir] injury." Banks v. United States, 69 Fed. Cl. 206, 212 (2006). Two factors, neither of which have been addressed by Plaintiffs in their Opposition, preclude a finding that a government action was the likely cause of Plaintiffs' damages.

First, Plaintiffs cannot show, as they must, that the flooding of their property was caused, in fact, by any of action by the Federal Government or by a Federal agency. See B&G Enterprises, 43 Fed. Cl. at 526-27. Rather, every scenario conceived of by Plaintiffs in their Complaint and in their Opposition memorandum is based upon the occurrence of a "significant hurricane," a natural event not under the control of the

Defendant, to push storm surges onto Plaintiffs' properties. See, e.g., Compl. at ¶¶ 11, 14,17, 38, 40; Pltfs' Opp. at 16-18.

The actual and indisputable facts in this case show that the affirmative actions taken by the United States Army Corps of Engineers (the "Corps") were designed to, and intended to, provide a certain level of protection from hurricane effects. See Def's Ex. A at ¶¶ 15-18. Both the levee system along Lake Pontchartrain and the addition of flood walls on the interior canals were part of a federal effort to enhance protection from damages from hurricanes in the New Orleans area - but were not, and could not have been, a guarantee to local residents that they would not suffer such damages.[2/] See id. No federal law ever purported to guarantee residents that the measures that were taken at federal expense would prevent all damages from severe storms. Plaintiffs' claims, however, reduced to their essentials, are effectively claiming a right to such a guarantee - or a right to have the federal government pay damages if the measures it took did not provide full and total protection against all natural

---

[2/] In fact, it is indisputable that had the floodwalls not been in place, Plaintiffs' properties would have experienced flooding sooner and to a larger extent than was otherwise experienced. Most of the New Orleans area is at or below sea level and occupation of those areas would not have been consistently possible without the floodwalls.

events.

Plaintiffs have not, and cannot, show that the flooding of their property was likely, much less directly, caused by the government's efforts to provide some level of protection against hurricane damages or by the efforts to increase such protections by the addition of flood walls to preexisting levees built by local governmental entities. See Banks, 69 Fed. Cl. at 212; Brace, 72 Fed. Cl. at 362.

Further, Plaintiffs have failed to demonstrate that the Corps had, or could have had, any control whatsoever over the winds and storm surges propagated by Hurricane Katrina. In the flooding easement cases with which this Court is familiar, there was always an element of control that the United States had over flood water, either by creating an impoundment or operating a dam so as to alter water flows. In the present case, however, the Corps had no ability to control or influence these storm-produced effects. And since the Corps had no control over such effects, it is manifestly clear that those effects cannot be construed as flowing from a governmental action. Thus, Plaintiffs have failed to show that their flooding was the natural and probable result of prior governmental actions in constructing floodwalls.

Plaintiffs try to support their claims by citing Tri-State Materials Corp. v. United States, 213 Ct. Cl. 1, 550 F.2d 1 (1977), for the proposition that Defendant can be held liable for a taking in cases where flood waters are not controlled by government action. Pltfs' Opp. at 9. Tri-State, however, cannot be read to encompass that notion because the case did, in fact, involve waters controlled by a government action. In Tri-State, defendant built a lock and dam project on a river. 550 F.2d at 2. In finding for the plaintiff, the Tri-State court specifically held that the water in the lock and dam, water under the control of the defendant, raised the groundwater table in the area, preventing deep drainage of water and leading to the plaintiff's damages in that case. Id. at 4. Accordingly, it is clear that Tri-State cannot be read to support an award of compensation for flood damages incurred as a result of water that was in no way under government control.

Demonstrating causation is not, however, the only hurdle for Plaintiffs under the direct, natural or probable prong of the tort-taking inquiry. See Banks, 69 Fed. Cl. at 212. They must also show that Defendant "should have predicted or foreseen the resulting injury." Moden, 404 F.3d at 1343. Plaintiffs' Opposition does little to meet this standard and nothing to rebut

Defendant's argument that Hurricane Katrina was an unforeseeable causative factor that intervened between any action taken by Defendant and Plaintiffs' ultimate injuries. Def's Mot. at 11-13. Moreover, despite their efforts, Plaintiffs cannot dispute the unusual intensity of Hurricane Katrina or the fact that its winds and waves of that massive storm generated nearly unprecedented storm surge. See Def's Ex. B. In Moden, the Federal Circuit advised that an "injury may not be foreseeable if an intervening cause breaks the chain of causation." 404 F.3d at 1343. Here, Hurricane Katrina was the intervening cause between any action taken by the government and Plaintiffs' ultimate injuries.[3] Therefore, Plaintiffs cannot show that their injuries were the foreseeable result of a government action.

Failing to show that a government action was the likely cause in fact of their injuries, or that such injuries were the foreseeable result of a government action, Plaintiffs then have not shown that their injuries were the direct, natural or probable result of a government action or that their

[3] Plaintiffs incorrectly assert that evaluating whether Hurricane Katrina was foreseeable is a red herring. Pltfs' Opp. at 11. A foreseeability evaluation is obviously necessary in order to discern whether the storm was an "unforeseeable intervening cause" sufficient to cut-off any potential liability of Defendant. See Def's Mot. at 17.

claims are due treatment under takings law. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1356 (Fed. Cir. 2003); Moden, 404 F.3d at 1342. It follows that the jurisdiction of this Court cannot appropriately be exercised in this matter and Defendant should be granted judgment as a matter of law. Id.

2. Any Governmental Interference Was Not Substantial or Frequent.

The second prong of the tort versus taking inquiry "requires the court to consider whether the government's interference with any property rights of [plaintiffs] was substantial and frequent enough to rise to the level of a taking." Ridge Line, 346 F.3d at 1357. In Ridge Line, the Federal Circuit noted that "[g]overnment-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort." Id. at 1355 (quoting Barnes v. United States, 210 Cl. Ct. 467, 538 F.2d 865, 870 (1976)). The Federal Circuit has also held that "'isolated invasions such as one or two floodings . . . do not make a taking . . . , but repeated invasions of the same type have often been held to result in an involuntary servitude." Id. at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)).

Plaintiffs' Opposition does little more than continue to allege that the

properties in question are subject to inevitably recurring floods as a result of a perceived design defect in the floodwalls in question. Pltfs' Opp. at 17. Plaintiffs assertion is both legally and factually[4] incorrect. In Berenholz v. United States, 1 Cl. Ct. 620, 626 (1982) the court recognized that "inevitable recurrence" cannot be demonstrated, and as a result a taking suit cannot be maintained, where "'a random event induced more by an extraordinary natural phenomenon than by Government interference . . .'" was the cause of damage to a plaintiff's property. Id. (quoting Wilfong v. United States, 202 Ct. Cl. 616, 622 (1973)). This is true even when any "permanent damage to the property [is] partially attributable to Government activity." Id.

As discussed in our initial memorandum, Def's Mot. at 18, this maxim was more recently affirmed by the Court of Federal Claims in Teegarden v. United States, 42 Fed. Cl. 252 (1998). In that case, the court noted that "[i]n the context of a claim for inverse condemnation, damages resulting

---

[4] While Plaintiffs ask the Court to assume that the conditions that led to the flooding still exist in the area, they fail to advise the Court that, in fact, the Corps has undertaken and completed significant repairs to the interior levees and floodwalls and have installed new floodwalls of a different design to prevent the type of failure that occurred during Hurricane Katrina. See Declaration of Lieutenant Colonel Murray P. Starkel, attached as Defendant's Exhibit C.

from a random event induced more by an extraordinary natural phenomenon than by Government interference cannot rise to the level of a compensable taking even if there is permanent damage to property partially attributable to Government activity." Id. at 257 (quoting Berenholz, 1 Cl. Ct. at 626 (quoting Wilfong, 202 Ct. Cl. at 622)(internal quotations omitted). Similarly, here any flooding or flood damage done to Plaintiffs' properties was the result of an "extraordinary natural phenomenon . . .," rather than some government action, and thus cannot give rise to a compensable taking. Teegarden, 42 Fed. Cl. at 257; Berenholz, 1 Cl. Ct. at 626; Wilfong, 202 Ct. Cl. at 622.

Because Plaintiffs have not established that the flooding of their properties will inevitably recur, their claim must fail. As a matter of law, judgment should be entered in favor of Defendant because Plaintiffs' claims, for flooding which is not inevitably recurring, at most, sound in tort and are outside the jurisdiction of this Court. See, e.g., Moden, 404 F.3d at 1432; see also Ridge Line, 346 F.3d at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)); Singleton v. United States, 6 Cl. Ct. 156, 162 (1984).

3. Plaintiffs' Erroneous Construction of the Causation Factor

Plaintiffs construction of the standard that should be used in evaluating the direct, natural and probable prong of the tort-taking test is incorrect. Initially, Plaintiffs rely on language from Cotton Land Co. v United States, 109 Ct. Cl. 816, 75 F.Supp. 232 (1948), to establish that flooding that results through "a chain of events occurring in a natural order . . . but originally set in motion . . ." by a government action may be treated as a taking. Id. at 233. However, the facts of this case and Cotton Land bear so little resemblance that the comparison is basically fruitless.

Cotton Land involved a classic Fifth Amendment taking by flooding fact pattern. The government erected a dam across a river which, of course, had the effect of creating a lake. Id. That lake decreased the speed of the river, causing increased sand build-up and raising the river's elevation. Id. The rising river ultimately overflowed its banks and flooded the plaintiffs' land. Id. In that case, this Court's predecessor denied a "remoteness of cause" defense because it was apparent that the creation of the dam led, in a "natural order" to the slowing of the river, the increased deposit of sand, the river's ultimate rise and the eventual flooding of the plaintiffs' lands. Id. Applied to the facts of this case, the same analysis

serves as a foil to demonstrate how ill-suited Plaintiffs' claims are to the takings realm. Here, Defendant placed floodwalls on existing levees. Def's Ex. A at ¶¶ 13, 15. A decade passed with no flooding of Plaintiffs' property and then a phenomenally powerful storm, pushing some of the highest surges ever seen on the Gulf Coast, Pltfs' Ex. A at I-20, inundated the New Orleans area and overwhelmed the floodwalls, causing the flooding of the city. This was not an example of water which was flowing in its "natural order" resulting in a flood. Rather, this was the case of an extraordinary storm event causing a flood.

Because Plaintiffs' analysis of the relevant test is flawed, their Opposition does little, if anything, to meet their burden of establishing that they have properly invoked the jurisdiction of this Court. Accordingly, Defendant is due judgment as a matter of law.

### B. Plaintiffs' Opposition Memorandum Fails to Meet Their Burden of Proof As to Each Element of Their Claim.

In their Opposition, Plaintiffs attempt to paint Defendant as somehow obscuring or distorting the facts of this case. Pltfs' Opp. at 2-6. As our opening memorandum made clear, and as we demonstrate here, the facts of this case are not in dispute and dictate the entry of judgment in favor of Defendant.

Many of Plaintiffs' factual assertions result from the use of facts taken out of context. For instance, in their continued effort to downplay the sheer force of Hurricane Katrina, Plaintiffs relate that the winds of the storm were in the Category 1 to Category 3 range on the Saffir-Simpson scale when the storm struck New Orleans. Pltfs' Opp. at 2. Plaintiffs further claim that Hurricane Katrina was a "weak Category 3 hurricane . . .," despite the fact that their cited source simply calls the storm "a Category 3 storm at landfall . . . ." Id. (citing Pltfs' Ex. A at I-21). They continue on to detail the flooding of the city while failing to mention that the storm surge associated with Hurricane Katrina was "substantially higher" than the surge associate with Hurricane Camille, a Category 5 storm. Pltfs' Opp. at 3; Pltfs' Ex. A at I-21. They also fail to note that while the Saffir-Simpson is a "good predictor of wind damage from hurricanes, it is not a particularly good predictor of the surge and wave generation potential for these storms." Id. Another notable factual omission is that rainfall accounted for "at least 20% of the total volume of water that flooded the New Orleans Metropolitan area." Pltfs' Ex. A at I-21. Plaintiffs' provision of this distorted picture is especially troubling given that the damage done by the storm's floodwaters, and not its winds, is at the very core of Plaintiffs' claims. See Pltfs' Opp. at 16-18.

Despite Plaintiffs' efforts to minimize the storm and its central importance to this case, nothing in their Opposition refutes the fact that Hurricane Katrina was "an extraordinarily powerful" storm and the cause of Plaintiffs' injuries. Def's Ex. B at 1.

Plaintiffs also use quotes taken out of context in an attempt to create an issue over the construction of the levees at issue in this case. Pltfs' Opp. at 4. As detailed in our opening memorandum, the hurricane protection systems at issue in this case are composed of two components. First, each of the canals at issue is lined by an earthen berm called a levee. See Def's Ex. A at ¶ 7. Second, each of those levees was supplemented by the placement of a floodwall on the top of the earthen mound. Id. at ¶¶ 13, 15. While the Corps did in fact build some of the floodwalls, and has admitted such action, Def's Mot. at 4, it is indisputable that it did not construct the earthen levees involved in this case. This fact is not at all in conflict with the portions of the Interagency Performance Evaluation Task Force Report ("IPET") and the Independent Levee Investigation Team Report quoted by Plaintiffs. Pltfs' Opp. at 4.[5/] Defendant's brief and the

---

[5/] The Corps did construct the levees along Lake Ponchartrain, but the levees at issue in this case were along interior drainage canals which were built by local levee districts. See Def's Ex. A. The only Corps involvement with these levees was an effort in the late 1990's to add to the protection

Declaration of Lieutenant Colonel Starkel provide the definition of the "project" reference in the IPET. Def's Mot. at 4; Def's Ex. A at ¶¶ 13, 15. The project encompassed the placement of floodwalls on top of already existing levees in the New Orleans area. Id. It follows that Defendant's statement that it did not construct the levees in question has not been disputed.

Equally puzzling is Plaintiffs' assertion that Defendant is attempting to avoid responsibility by foisting it onto third-party contractors who worked for the Corps on the floodwall project. Pltfs' Opp. at 5. Defendant simply never made any such assertion. Rather, Defendant, in trying to give the Court a more complete picture of this case, provided a more complete history of the canals than was otherwise available from Plaintiffs' Complaint. This necessarily included discussing the indisputable fact that the levees in question were built by state and local entities, and not by the Corps.

## II. DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiffs' Opposition purports to also be a Cross Motion for Summary

---

afforded by those structures by adding flood walls on top of some of those levees. Id.

Judgment. However, as discussed above, Plaintiffs' have failed to identify a claim within the jurisdiction of this Court. See infra at 5-13. Further, even if they had alleged such a claim, which we deny, Plaintiffs submissions do not provide undisputed facts to the Court. In Defendant's view all of the supporting declarations filed by Plaintiffs fail to raise a factual issue since they either consist of opinions unsupported by any factual evidence or assertions by the property owners that have not been shown to be within their competence. Accordingly, Plaintiffs' Cross Motion for Summary Judgment must, as a matter of law, be denied in all respects.

## III. CONCLUSION

As we have demonstrated in our opening memorandum and in this reply, Plaintiffs have failed to state a valid claim for a Fifth Amendment taking and have failed to meet their burden of proof in any event. Instead, Plaintiffs seek to invoke the jurisdiction of this Court over claims sounding, at most, in tort. Because such claims are outside the jurisdiction of this Court, Defendant is entitled to summary judgment dismissing the complaint in this case as a matter of law.

Respectfully Submitted this 6th day of February, 2007.

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

s/ Fred R. Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.