# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **SHEILA NICHOLSON, and** | ) | |
| **SHELLEY NICHOLSON, and** | ) | |
| **RICHARD HIRSTSUS** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | **NO. 05-1259IL** |
| **vs.** | ) | |
| | ) | **Hon. Lawrence M. Baskir** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CONSOLIDATED STATEMENT OF UNCONTROVERTED FACTS

MITCHELL J. HOFFMAN, Trial Attorney
MICHAEL R. ALLWEISS
HILARY HURST LANDRY
JEFFREY M. HOFFMAN
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139-7735
Telephone: (504) 581-2450
Facsimile: (504) 581-2461

Attorneys for the Plaintiffs

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

FRED R. DISHEROON, Special
Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Facsimile (202) 616-9667

Counsel for the Defendant.

## UNCONTESTED FACTS

**1.**

**On August 29, 2005, the eye of Hurricane Katrina passed approximately twenty miles east of New Orleans. Pltfs' Ex. B at 7-8; Def's Ex. B at 7-8.**

**2.**

**The IHNC and its lock were incorporated into the Federal navigation project, the Gulf Intracoastal Waterway (GIWW) and continues to serve as apart of that navigation system to the present. Def's Ex. A at ¶ 6.**

## PLAINTIFFS' PROPOSED FACTS

**3. (P)**

**Four I-wall failures that resulted in breaches and very significant flooding occurred in the morning of August 29, 2005. P. Ex. A at p. I-30.**

Disputed as stated. This statement lacks proper context and Plaintiffs' use of the general term "failure" lacks specificity. The report of the Interagency Performance Evaluation Team ("IPET"), the source upon which Plaintiffs' assertion rests, gives a more specific description of what may have occurred in the outfall canals:

> Four breaches, all in the outfall canals and IHNC and all involving I-walls, occurred before water levels reached the top of the floodwalls. All were caused by foundation failures induced by the formation of a gap along the canal side of the floodwall. All of these structures were built over a layer of marsh sediments, in two cases underlain by clays and in the other two underlain by relict beach sand deposits. The subsurface conditions dictated the specific mechanics that, coupled with the high hydrostatic pressures introduced to depth by the gap along the fact of the sheet pile, led to the instability and failure. The sites underlain by sand experienced significant seepage and in one case a massive piping of subsurface sand from under the levee to the protected side, undermining the floodwall. The formation of the gap and the associated hydrostatic pressures introduced at depth resulted in a significant reduction of the factor of safety of the structure. This failure mechanism, in particular the gap formation, was not considered in the original design of these structures.

Defendant further notes that while the Plaintiffs have adduced the IPET report as evidence supporting their factual assertions, the portion offered by Plaintiffs

as Exhibit A, is, by its terms, only a draft and subject to revision. It follows that the conclusions of the report are not entirely reliable as evidence. Additionally, the IPET report has not been endorsed by the United States, the Corps of Engineers, which commissioned it, or by any other governmental or private sector organization. The citation of it by the United States in this document is solely for the purpose of revealing that Plaintiffs' proffered facts are not entirely supported by Plaintiffs' own evidence; it is not intended to be and should not be construed as an endorsement of the IPET report or the contents thereof.

Given the related litigation ongoing in the Easter District of Louisiana, the reliability of the IPET report is conceded for the purposes of the pending motion for summary judgment only.

**4. (P)**

**The I wall ~~failures~~ resulted in breaches of the walls and levees. Pl. Ex. A at p. I-30.**

Disputed as stated. <u>See</u> Response to No. 1.

**5. (P)**

~~**The breaches caused by the I wall failures flooded the City of New Orleans.**~~ **Pl. Ex. A at p. I-30.**

This statement is disputed because it is misleading. It implies that the four breaches on the three canals were responsible for the entire flooding of New Orleans. This is untrue. The IPET report, upon which Plaintiffs' allegation rests, states that there were fifty other breaches in the area which, along with rainfall, contributed to the flooding of the city. Pltfs' Ex. A at I-7.

**6. (P)**

**Nearly 80% of the city was inundated by flood waters. Pl. Ex. A at p. I-30.**

Defendant disputes this statements because it implies that 80% of the city was flooded solely by waters flowing through breaches on the three canals. See, e.g., Pltfs' Ex. A at I-7, I-36. According to Plaintiffs' proffered evidence this is untrue. See Response to No. 3.

**7. (P)**

**The flood waters caused ~~permanent~~ damage to property in New Orleans. Def. Motion for Summary Judgment at p. 18. Pl's Ex. G at pps. 22, 25.**

Defendant disputes this statement because the damage to Plaintiffs' property is remediable and not permanent. Additionally, Plaintiffs have offered no evidence to support this statement.

**8. (P)**

**The cause of the permanent damage was defectively designed flood walls. Pl. Ex. G at p. 11.**

Defendant disputes this statement for the reasons set forth in response to statements number 3 and 5.

**9. (P)**

**~~The U.S. Army Corps of Engineers was responsible for the design and construction of the flood walls.~~ Pl. Ex. A at p. I-16, Pl. Ex. C at 12-3**.

Defendant disputes this statement because it was only responsible for the design and construction of some of the floodwalls. Def's Ex. A at ¶ 19.

**10. (P)**

**~~A category three hurricane under the Saffir Simpson Scale is roughly equivalent to the standard project hurricane (SPH) that the Corps' was directed to consider in designing the flood walls.~~ Pl. Ex. A at p. I-16.**

Defendant denies this statement. The SPH was a hypothetical storm developed before the use of the Saffir-Simpson scale. The hypothetical storm had a forward speed of 6 knots, maximum wind velocity of 100 miles per hour, a central pressure of 27.6 inches and a radius of 30 nautical miles. Def's Ex. A.

**11. (P)**

**The storm surge created by Katrina was within project design. Pl. Ex. C at p. 12-12, 12-13.**

Defendant dispute this statement because it is not accurate. The IPET report, relied upon by Plaintiffs, notes that “Hurricane Katrina generated water levels that for much of the system significantly exceeded the design criteria.” Pltfs’ Ex. A at 1-6.

**12. (P)**

**~~The breaches occurred before water levels exceeded project design.~~ Pl. Ex. A at p. I-7, I-30. Pl. Ex. E at p. 2.**

Defendant disputes this statement. While the IPET report, which was relied upon by Plaintiffs, does state that the breaches in the three canals occurred before the walls were overtopped, it also states that breaches "along the west side of the IHNC" were induced by overtopping. Pltfs' Ex. A at 7. The statement also fails to reflect that the floodwalls were not designed to withstand a storm surge of the magnitude caused by Hurricane Katrina.

**13. (P)**

**The failure mechanism of the flood walls was not considered in the original design of the structures. Pl. Ex. A at p. I.**

See Response to No. 1.

**14. (P)**

~~**Had the Corps designed flood walls consistent with the Corps statutory obligation, the flooding in New Orleans would have been substantially less.**~~

Defendant disputes this statement. Plaintiffs have not offered any evidence that the flooding of New Orleans would have been less if the Corps had complied with the alleged statutory obligation. Indeed, if the floodwalls had not been built in the 1990s, there would likely have been greater flooding because the storm surge levels in the canals were higher than the heights of the levees. Accordingly, water would have flowed unimpeded over these levees.

**15. (P)**

**Two- thirds (2/3) of the flooding of the City of New Orleans was attributable to water flowing through the breaches. Pl. Ex. A at p. I-7.**

This statement is denied. See Response to No. 3.

**16. (P)**

**~~The Corps could foresee that the flood walls would break under conditions they were designed to withstand.~~ Pl. Ex. C at p. 12-7.**

Defendant disputes this statement because it is not a fact but a legal conclusion. The walls were not designed to protect against a storm sure of the magnitude created by Hurricane Katrina.

**17. (P)**

**~~The Corps could foresee that, in the event of such a breach, Plaintiffs property would be inundated and devalued by the absence of secure protection.~~ Pl. Ex. C at p. 12-10.**

Defendant disputes this statement because it is not supported by any probative or admissible evidence.

**18. (P)**

**The basic flaws in design of the levee protection system was first recognized over two (2) decades before Hurricane Katrina. Pl. Ex. E at p. 12-7.**

Defendant disputes this statement. The IPET report, one of Plaintiffs' exhibits, states that "[t]here was no evidence of government or contractor negligence or malfeasance. With the exceptions noted below, the system was generally built as designed, and design approaches were consistent with local practice." Pltfs' Ex. A at I-5.

**19. (P)**

**The Corps recognized problems with the design of these structures years before Hurricane Katrina. Pl. Ex. C at p. 12-14.**

Defendant disputes this statement. Plaintiffs have not produced any factual evidence to support this statement.

**20. (P)**

**~~The storm of the size and strength of Katrina was predictable.~~**

This statement is denied. Plaintiffs have not provided any evidence that this is true. The objective facts of this case, as found in Defendant's Exhibit B and Plaintiffs' Exhibit B, show that Hurricane Katrina was the fourth strongest hurricane ever recorded in the Atlantic (later the sixth strongest after Hurricanes Rita and Wilma surpassed it) and had the largest storm surge of any storm to hit the New Orleans area. Def's Ex. B at 6, Pltfs' Ex. B at 6.

**21. (P)**

~~**All of the conditions responsible for the breaches were known and foreseeable in advance of these failures.**~~ **Pl. Ex. F at p. 5.**

Defendant disputes this statement. See Response to Nos. 14-17.

**22. (P)**

**~~These were predictable failures.~~ Pl. Ex. F at p. 5.**

Defendant disputes this statement. The only backing Plaintiffs have for this statement are the opinions of one author, unsupported by any factual evidence, that were incorporated into the report of the Independent Levee Investigation Team (ILIT). Further, the actual phrase used by the author was the paradoxical statement that these were "predictable surprises." Pltfs' Ex. C at 12-10; Pltfs' Cross Motion at 12.

**23. (P)**

**~~In 1990, the Vicksburg office of the Corps of Engineers noticed design problems but did nothing.~~ Pl. Ex. E.**

Defendant disputes this statement because Plaintiffs' do not specify what the alleged "design problem" was.

**24. (P)**

**The Corps knew, could and should have foreseen, that in the event of a major hurricane, the levees would fail resulting in catastrophic human suffering, loss of life and property loss. Pl. Ex. E at p. 1.**

Defendant denies this statement. See Responses to Nos. 3-24.

**25. (P)**

**The Corps admitted that the probability of failure of flood walls and some sections of levees were high, and there was a great potential for serious consequences because of the large population and extensive property being protected by the structures. Pl. Ex. A at p. I-39.**

Defendant disputes this statement. It was taken out of context from Plaintiffs' cited source. The IPET report notes that "the risk prior to Katrina was significant, in part, because New Orleans is mostly below sea level . . . ." Pltfs' Ex. A at 1-39.

**26. (P)**

**~~An extraordinary storm did not cause the damage, but rather, a known design failure did.~~ Pl. Ex. A at p. I-39.**

Defendant denies this statement. The clear evidence establishes that it was the storm surge from Hurricane Katrina that caused flooding in New Orleans. Def's Ex. B at 9-10; Pltfs' Ex. A at I-6; Pltfs' Ex. B 9-10.

**27. (P)**

**~~The property damage to the property in New Orleans was foreseeable and foreseen.~~ Pl. Ex. C at p. 12-14.**

Defendant disputes this statement for the reasons stated above. See Response to Nos. 3-24.

**28. (P)**

**~~The damage caused by the flooding in New Orleans as a result of the breaches in the flood walls was induced more by the Corps of Engineers actions than by an extraordinary natural phenomenon.~~**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that the flooding of New Orleans was due to actions of the Corps.

**29. (P)**

**~~But for the defective designs of the flood walls, damage to New Orleans would have been minimal~~.**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that the flooding of New Orleans would have been minimal but for the allegedly "defective design" of the flood walls.

Indeed, the meteorological evidence show that the level of water from the storm surge would have overtopped all of the levees on the three canals if the floodwalls had not been built, so the amount of flooding could have been even greater in that event.

**30. (P)**

~~**The Corps' defectively designed the flood walls imposed consequences that have preempted Plaintiffs' right to enjoyment of their property for an extended period of time.**~~ **Def. Motion for Summary Judgment at p. 18; Pl's Ex. G pps. 22, 25.**

Defendant disputes this statement because it erroneously assumes that the Corps defectively designed the floodwalls and also fails to reflect that Plaintiffs have not been denied use of their property. Plaintiffs may have, at most, sustained structural damage which is repairable and there is no evidence that any damage will recur in the future. Rather, the Corps has taken action to prevent the type of breaches that occurred in the wake of Hurricane Katrina. See Def's Ex. C at 4-5; Pltfs' Ex. A at I-iii, I-39.

**31. (P)**

**~~Plaintiffs cannot acquire the fair values for their property because of the perceived lack of capable protection provided by the flood walls.~~ Pl. Ex. H *in globo*.**

Defendant disputes this statement. Plaintiffs have not established it with any evidence.

**32. (P)**

**~~The Corps' designed flood walls has created a safety hazard for property in New Orleans.~~ Pl. Ex. A at p. I-39.**

Defendant disputes this statement. There is no evidence to support it.

**33. (P)**

**~~The safety hazard so created has caused permanent damage.~~ Pl. Ex. A at p. I-39.**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that there is a safety hazard. In fact, the evidence suggests otherwise. <u>See</u> Def's Ex. C at 4-5; Pltfs' Ex. A at I-iii. I-39.

**34. (P)**

**The flooding was ~~the direct, natural and probable~~ result of an authorized activity of the Corps of Engineers.**

Defendant disputes this statement. The evidence does not support such a conclusion. The flooding was caused by a natural event, i.e. storm surge, which was beyond the capability of the hurricane protection system to prevent.

## DEFENDANT'S PROPOSED FACTS

**35. (D)**

**The Corps' involvement in hurricane protection for the City of New Orleans has been limited. Def's Ex. A at ¶¶ 4-8.**

Contested. This is a conclusion, not a fact.

**36. (D)**

**The Corps' involvement in hurricane protection for the City of New Orleans is of relatively recent origin. Def's Ex. A at ¶¶ 4-8.**

Contested. This is a conclusion, not a fact.

**37. (D)**

**Levees to protect New Orleans from flooding from a storm surge resulting from hurricanes or tropical events have long been in existence. Def's Ex. A at ¶ 8.**

Contested. This is a conclusion, not a fact.

**38. (D)**

**The construction of the levees was in many cases undertaken by State and Local agencies, not by the Corps itself. Def's Ex. A at ¶¶ 5-7.**

Statement is not material.

**39. (D)**

**The responsibility of operating and maintaining the levees after their construction rested with State and Local agencies, not by the Corps itself. Def's Ex. A at ¶ 15,19; Pltfs' Ex. C at 12-1.**

Statement is not material. The Corps was responsible for design and construction of the floodwalls. The design problems caused the majority of flooding in New Orleans. The reference to levees is misleading.

**40. (D)**

**The 17th Street Canal was initially constructed as a component of a railroad project. Def's Ex. A at ¶ 5.**

Statement is not material.

**41. (D)**

**The London Avenue Canal was initially a privately constructed avenue for local commerce. Def's Ex. A at ¶ 4.**

Statement is not material.

**42. (D)**

**The Inner Harbor Navigational Canal ("IHNC") was built by the local government as a toll facility to allow navigation between the Mississippi River and Lake Pontchartrain. Def's Ex. A at ¶ 6.**

Statement is not material.

**43. (D)**

**The 17th Street and London Avenue Canals were adapted by local governmental authorities to serve as interior drainage facilities, a use continued by local governments to the present. Def's Ex. A at ¶ 7.**

Statement is not material.

**44. (D)**

**The earthen base of a flood protection system is called a levee. Def's Ex. A ¶ 7.**

Contested, it is unclear to what the words "flood protection system" refer. Otherwise, a levee has been so defined.

**45. (D)**

**A floodwall is a wall attached to a length of steel that has been driven into the ground.**

Denied, a floodwall has many components, one of which is a length of steel and sometimes, a concrete wall.

**46. (D)**

**The Corps' involvement on the canals in question was primarily limited to the design and placement of floodwalls on top of some of these already existing levees. Def's Ex. A at ¶¶ 7, 15 and 19.**

Denied, the Corps was responsible for construction and design of the floodwalls.

**47. (D)**

**Hurricane Katrina was "an extraordinarily powerful and deadly hurricane that carved a wide swath of catastrophic damage . . . ." Def's Ex. B at 1.**

Statement is not material. It is taken out of context. The floodwall failures was the cause of most the damage to the City of New Orleans.

**48. (D)**

**As it passed through the open waters of the Gulf of Mexico, Hurricane Katrina was rated as a Category 5 storm on the Saffir-Simpson hurricane scale. Def's Ex. B at 1.**

Statement is not material. The storm hit New Orleans with winds less than category 3 strength.

**49. (D)**

**~~At the time Hurricane Katrina struck New Orleans it was still a powerful "high-end Category 3 hurricane . . . ."~~ Def's Ex. B at 6.**

This is denied. The actual quote referred to by the U.S. is "the aircraft data from 29 August indicate that the structural changes in Katrina were associated with its rapid weakening to a high end Category 3 hurricane just before landfall in Louisiana." Def Ex. B at p. 6; Pls Ex. B at p. 6. Landfall in Louisiana was at Buras, Louisiana, some 50 miles south of the city.

The winds from Hurricane Katrina at the time it struck New Orleans were not Category 3 strength. Pl's Ex. B at p. 8.

**50. (D)**

**The size and strength of the storm created a storm surge of ten to fourteen feet along the southern shore of Lake Pontchartrain, ~~and into the three canals at issue in this case~~. Def's Ex. B at 9.**

A storm surge of ten to fourteen feet was created along the southern shore of Lake Pontchartrain, but did not enter the three canals at issue but all floodwalls on the three canals failed before water levels achieved the height set forth. The maximum height in the 17th Street Canal was 7 feet. The London Avenue floodwalls were never overtopped. Pl's Ex. A at p. I-7.

**51. (D)**

**The floodwalls installed in the interior drainage canals in the 1990s were intended to increase the level of protection provided for New Orleans against hurricanes. They were not designed to prevent all damage from hurricanes or flooding but only that attributable to the SPH. Without the protection afforded by the floodwalls, the flooding of New Orleans that occurred as a result of the storm surge of Hurricane Katrina would likely have been even greater since the surge levels were higher than the tops of the preexisting levees. Without the floodwalls, flood waters would have flowed without resistance into the flooded areas at issue in this case.**

Contested. This is a conclusion, not a fact. To compare possible damage without floodwalls is inappropriate since the Defendant was charged with designing and constructing floodwalls which were supposed to withstand water levels that they experienced before, during and after Katrina.

**RESPECTFULLY SUBMITTED:**
**LOWE, STEIN, HOFFMAN, ALLWEISS**
**& HAUVER, L.L.P.**

**BY: s/ Mitchell J. Hoffman by Mark T. Romley**
**MITCHELL J. HOFFMAN, Trial Attorney**
**MICHAEL R. ALLWEISS**
**HILARY HURST LANDRY**
**JEFFREY M. HOFFMAN**
**701 Poydras Street, Suite 3600**
**New Orleans, Louisiana 70139-7735**
**Telephone: (504) 581-2450**
**Attorneys for the Plaintiffs**

**MATTHEW J. MCKEOWN**
**Acting Assistant Attorney General**
**Environment and Natural Resources Division**

**BY: s/ Fred R. Disheroon by Mark T. Romley**
**FRED R. DISHEROON, Special Litigation Counsel**
**MARK T. ROMLEY, Trial Attorney**
**Natural Resources Section**
**Environment and Natural Resources Division**
**U.S. Department of Justice**
**601 D. St. N.W., Room 3022**
**Washington, D.C. 20004**
**Telephone: (202) 616-9649**
**Counsel for the Defendant.**