# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SHEILA NICHOLSON, and<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-1259L<br><br>Hon. Lawrence M. Baskir |

## Defendant's Response to Plaintiffs' Sur-Reply

I. INTRODUCTION AND BACKGROUND

Pursuant to the Court's order of May 24, 2007 (Docket No. 32), Defendant hereby submits its response to Plaintiffs' Motion for Leave to File A Memorandum In Response to Defendant's Reply Memorandum to Plaintiffs' Motion for Partial Summary Judgment ("Pltfs' Sur-Reply").

Plaintiffs' Sur-Reply neither defeats Defendant's motion for summary judgment nor advances Plaintiffs' cross-motion for summary judgment. Rather, to reach its conclusions, Plaintiffs' brief relies on inapplicable state law principles, theories of law that are inconsistent with the established law of this Court and the Federal Circuit, and a misunderstanding regarding the

nature of the Interagency Performance Evaluation Task Force Report ("IPET Report"). Accordingly, for the reasons discussed in Defendant's Motion for Summary Judgment ("Def's Mot.") and Defendant's Reply Memorandum ("Def's Reply") and, for the reasons discussed below, Defendant asks the Court to grant it summary judgment in this matter and for the denial of Plaintiffs' cross-motion for summary judgment.

II. ARGUMENT

As an initial matter, Defendant would like to point out that much of Plaintiffs' purported cross-motion relies on the mistaken notion that the IPET Report can be used as an admission of the United States Army Corps of Engineers ("Corps") and, therefore, as a source of undisputed facts. However, Plaintiffs' reliance on the IPET is misplaced. First, having been produced by an interdisciplinary task force consisting of both governmental and non-governmental scientists and engineers, the IPET Report is not even a government document, much less a Corps document. Second, language in the IPET Report makes clear that the document does not contain the opinions or conclusions of the Corps.[1/] Third, as the Court

[1/] A footnote on every page of the IPET Report reads, "This report is the independent opinion of the IPET and is not necessarily the official position of the U.S. Army Corps of Engineers."

noted at oral argument, the IPET Report is still a draft document and its use is troublesome because the report is subject to being superseded. Accordingly, to the extent Plaintiffs' cross-motion relies on "undisputed" facts derived from the IPET Report, it must be denied.

### A. Plaintiffs' Reliance on Non-Binding State Law Precedent Does Not Defeat Defendant's Motion for Summary Judgment.

In their Sur-Reply, Plaintiffs place great emphasis on state cases. Pltf's Sur-Reply at 2-4, 7-9 of 179. Although these cases are non-binding authority, it bears noting that the cited cases actually support Defendant's position that in order for a governmental entity to be saddled with liability for a taking by flooding, that entity must in some way channelize water or change the natural course of water flow. See Bunch v. Coachella Valley Water Dist., 935 P.2d 796 (Cal. 1997) (arising out of a project that diverted the natural flow of waters that flowed down a canyon); Arreola v. County of Monterey, 99 Cal.App.4th 722 (Cal.App. 2002) (finding takings liability arising from a project designed to channelize the flow of a river); Collier v. City of Oak Grove, __ S.W.3d __, 2007 WL 1185982 (Mo.App. Apr. 24, 2007) (finding takings liability when sewage channelized by the city into a pipeline seeped into the plaintiff's property); Harris County Flood Control

Dist. v. Adams, 56 S.W.3d 665 (Tex.App. 2001) (plaintiffs alleged that a highway and its associated storm water collection system caused the flooding of their property). This is quite different from the instant case where Defendant did not channelize water or divert water flow but set out only to provide an additional level of protection against hurricane storm surges than was otherwise available.

B. Plaintiffs Cannot Meet the Requirements of the Ridge Line Test.

Although it has been discussed in detail in Defendant's Motion for Summary Judgment and Defendant's Reply Memorandum, further discussion of the Federal Circuit's Ridge Line inquiry is necessary to set straight some of the assertions made by Plaintiffs in their Sur-Reply. In order to succeed in their takings claim, Plaintiffs must demonstrate: 1) that their alleged injuries are the "direct, natural or probable result of an authorized [government] activity and not the incidental or consequential injury inflicted by the action . . ."; and 2) that the government action alleged to have caused the injury "appropriate[d] a benefit to the government at the expense of the property owner, or at least preempt[ed] the owner's right to enjoy his property for an extended period of time rather than merely inflict[ing] an injury that reduces its value." Ridge Line, Inc. v. United

States, 346 F.3d 1346, 1355, 1356 (Fed. Cir. 2003).

The first prong of the Ridge Line inquiry requires Plaintiffs, inter alia, to demonstrate a causal link between the government project and their alleged injuries. Id. at 1356. In their Sur-Reply, Plaintiffs attempt to skew the standard for causation in their favor by incorrectly citing Tri-State Materials Corp. v. United States, 213 Ct. Cl. 1, 550 F.2d 1 (1977). Plaintiffs assert that Defendant can be held liable for a taking in cases where flood waters that are not under the control of the United States cause damage to property. Pltfs' Sur-Reply at 4, 9 of 179. However, as explained in Defendant's Reply Memorandum, Tri-State cannot be read to encompass the notion that the United States can be held liable for damages done by waters not under its control because, in fact, the waters involved in Tri-State were controlled by the United States. Def's Reply at 10.

Plaintiffs' Sur-Reply also presents a distorted view of the second prong of the Ridge Line inquiry which "requires the court to consider whether the government's interference with any property rights of [plaintiffs] was substantial and frequent enough to rise to the level of a taking." Ridge Line, 346 F.3d at 1357. In Ridge Line, the Federal Circuit sharpened this requirement as it applies to government-induced flooding cases saying that

"[g]overnment-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort." Id. at 1355 (quoting Barnes v. United States, 210 Cl. Ct. 467, 538 F.2d 865, 870 (1976)). Despite this clear language in the Federal Circuit's jurisprudence, Plaintiffs' Sur-Reply posits that Defendant has "incorrectly" asserted that Plaintiffs' claims must fail because they cannot establish that the flooding of their property will inevitably recur. Pltfs' Sur-Reply at 6, 11 of 179. In support of Plaintiffs' assertion of error on this point, Plaintiffs' Sur-Reply quotes Berenholz v. United States, 1 Cl. Ct. 620, 626 (1982), for the proposition that "a taking may be supported where a Government activity or project 'which is permanent in nature imposes on private property certain consequences which are themselves permanent, and . . . that their recurrence is inevitable even if only intermittent.'" Pltfs' Sur-Reply at 6, 11 of 179. Plaintiffs' citation to this language does little to advance their position because, on its face, the "inevitable if only intermittent" standard is not inconsistent with the "inevitable recurrence" standard more recently used by the Federal Circuit in Ridge Line. It is this latter precedent on which Defendant's argument correctly relies.

It is also worth noting, in respect to the language quoted from

Berenholz, that Plaintiffs' Sur-Reply fails to include the very next, and very instructive, sentence that supports Defendant's position in this summary judgment proceeding. The Berenholz court went on to say that "where there is no such showing of inevitable recurrence, but, rather, 'a random event induced more by an extraordinary natural phenomenon than by Government interference' there can be no taking, even if there is permanent damage to property partially attributable to Government activity." Berenholz, 1 Cl. Ct. at 626 (quoting Wilfong v. United States, 480 F.2d 1326, 1329 (Ct. Cl. 1973)).[2/] It is beyond dispute that his case involves just such an "extraordinary natural phenomenon" in Hurricane Katrina. Accordingly, there can be no taking in this case, even assuming that Plaintiffs suffered permanent damage that is partially attributable to some action taken by Defendant.

## III. Conclusion

For the foregoing reasons, and for those discussed in Defendant's Motion for Summary Judgment and Defendant's Reply Memorandum, Defendant respectfully requests that its motion for summary judgment be

---

[2/] This maxim was more recently affirmed by the Court of Federal Claims in Teegarden v. United States, 42 Fed. Cl. 252 (1998). See also Def's Mot. at 18.

granted and Plaintiffs' cross-motion for summary judgment be denied.

Respectfully submitted this 76th day of June, 2007.

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources
Division

s/ Fred R. Disheroon
FRED R. DISHEROON, Special
Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources
Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.