**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SHEILA NICHOLSON, and<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS** | ) | |
| **Plaintiffs** | ) | **NO. 05-1259IL** |
| **vs.** | ) | **Hon. Lawrence M. Baskir** |
| **UNITED STATES OF AMERICA** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S UPDATED REPLY MEMORANDUM AND CONSOLIDATED STATEMENT OF UNCONTROVERTED FACTS**

FRED R. DISHEROON, Special
Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Facsimile (202) 616-9667

Counsel for the Defendant.

Pursuant to this Court's order of May 24, 2007, defendant, United States, hereby submits under this cover its updated Reply Memorandum and Consolidated Statement of Uncontroverted Facts. Both documents have been updated to reflect the latest version of the Interagency Performance Evaluation Task Force Report ("IPET Report").

Updates to defendant's Reply Memorandum are located on pages 16 and 17 (original numbering retained). All updates have been highlighted.

Updates to defendant's IPET Report references in the Consolidated Statement of Uncontroverted Facts are highlighted and located on the following pages: 2, 5, 6, 11, 18, 25, 26, 30 and 33 (original numbering retained).

Respectfully submitted July 2, 2007.

RONALD J. TENPAS
Acting Assistant Attorney General

s/ Fred R. Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SHEILA NICHOLSON,<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS, | ) | |
| Plaintiffs, | ) | No. 05-1259L |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

---

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.

# TABLE OF CONTENTS

I. DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Plaintiffs' Opposition Supports Defendant's Argument That The Claims in This Suit Sound, At Most, In Tort . . . . . . . 3

1. Plaintiffs Have Not Supplied Facts that Would Give Rise to Fifth Amendment Takings Claim . . . . . . . . 7

2. Any Governmental Interference Was Not Substantial or Frequent . . . . . . . . . . . . . . . . . . . . . . . . 12

3. Plaintiffs' Erroneous Construction of the Causation Factor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. Plaintiffs' Opposition Memorandum Fails to Meet Their Burden of Proof As to Each Element of Their Claim . . . . . . . 16

II. DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

Alost v. United States,
73 Fed. Cl. 480 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B&G Enterprises, Ltd. v. United States,
43 Fed. Cl. 523 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

Banks v. United States,
69 Fed. Cl. 206 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

Barnes v. United States,
210 Ct. Cl. 467, 538 F.2d 865 (1976) . . . . . . . . . . . . . . . . . . . . . 5, 12

Berenholz v. United States,
1 Cl. Ct. 620 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Cotton Land Co. v United States,
109 Ct. Cl. 816, 75 F.Supp. 232 (1948) . . . . . . . . . . . . . . . 15, 17, 19

Eyherabide v. United States,
170 Ct. Cl. 598, 345 F.2d 565 (1965) . . . . . . . . . . . . . . . . . . . . . . 12

Last Chance Mining Co. v. United States,
12 Cl. Ct. 551 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lujan v. National Wildlife Federation,
497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . 3, 7, 10-12, 14

Pendleton v. United States,
47 Fed. Cl. 480 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Singleton v. United States,
6 Cl. Ct. 156 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Teegarden v. United States,
42 Fed. Cl. 252 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Tri-State Materials Corp. v. United States,
213 Ct. Cl. 1, 550 F.2d 1 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wilfong v. United States,
202 Ct. Cl. 616, 480 F.2d 1326 (1973) . . . . . . . . . . . . . . . . . . . . 13, 14

**STATUTES**

28 U.S.C. 1346(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

**OTHER AUTHORITIES**

Katrina Canal Breaches Consolidated Litigation,
http://www.laed.uscourts.gov/CanalCases/CanalCases.htm
(last visited February 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Katrina Canal Breaches Consolidated Litigation,
http://www.laed.uscourts.gov/CanalCases/Intro.htm
(last visited February 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

| Exhibit Letter | Document Name |
|---|---|
| A | Declaration of Lieutenant Colonel Murray P. Starkel, Deputy District Engineer for the New Orleans District of the United States Army Corps of Engineers, sworn October 30, 2006 |
| B | National Hurricane Center, Tropical Cyclone Report, Hurricane Katrina, published December 20, 2005 |
| C | Declaration of Lieutenant Colonel Murray P. Starkel, Deputy District Engineer for the New Orleans District of the United States Army Corps of Engineers, sworn February 1, 2007 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SHEILA NICHOLSON,<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05-1259L |
| v. | ) | |
| | ) | Hon. Lawrence M. Baskir |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America, hereby submits its Reply Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment. Defendant respectfully submits that this Court must grant judgment to Defendant because, as a matter of law and indisputable fact, Plaintiffs' claims sound, at most, in tort and do not state a claim within the jurisdiction of this Court.

On October 30, 2006 Defendant filed its Motion for Summary Judgment, and a Memorandum in support thereof ("Def's Mot."), pursuant

to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). (Docket No. 16). On January 12, 2007, Plaintiffs filed a combined Cross Motion for Summary Judgment and an Opposition ("Pltfs' Opp."). Defendant herein Replies to both Plaintiffs' Opposition and and their purported Cross Motion for Summary Judgment.

## I. DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In their Complaint and Opposition memorandum Plaintiffs continue to fail to identify any facts that give rise to a takings claim under the Fifth Amendment. Rather the undisputed facts of this case establish that Plaintiffs have, at most, alleged only a tort claim for the flooding of their property.

Plaintiffs have identified two equally unavailing theories under which they seek compensation. First, Plaintiffs claim that they seek compensation for "the reduction in property values attributable to the defectiveness of the Corps' flood wall design." Compl. at ¶ 49; Pltfs' Opp. at 16. Second, Plaintiffs assert that they are due compensation for the damage done to their properties by Hurricane Katrina's flood waters. Pltfs' Opp. at 17.

### A. Plaintiffs' Opposition Supports Defendant's Argument That The Claims In This Suit Sound, At Most, In Tort.

Plaintiffs fail to meet their burden of proof under the rule that entry of judgment is mandated against a party who fails to make a showing essential to that party's burden of proof at trial. Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990). See Def's Mot. at 6. As we discussed in our opening memorandum, this Court is one of limited jurisdiction. Def's Mem. at 10. Accordingly, if either of Plaintiffs' claims properly allege a Fifth Amendment takings claim, this Court may hear their case. Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005). If, however, Plaintiffs' Complaint and Opposition raise only claims arising in tort, Plaintiffs have not carried their burden and Defendant is due judgment as a matter of law. See id.; Lujan, 497 U.S. at 884.

A simple reading of the Complaint in this case, and its further explication in the Opposition memorandum, leads to the inescapable conclusion that Plaintiffs' claims rely entirely on alleged failures - i.e. omissions - by the United States to adequately provide Plaintiffs protection from hurricane damages (including flooding due to hurricane winds and storm surge). There is no allegation of any affirmative action by a

governmental agency in Plaintiffs' takings claims. Rather, Plaintiffs either point to the "defective" design of flood walls, i.e. the failure to properly design flloodwalls, Compl. at ¶¶ 9, 10, 11, 12, 46; Pltfs' Opp. at 9, 12-14, or the failure to provide a hurricane protection system capable of withstanding a Category 5 hurricane. Compl. at ¶¶ 47-50; Pltfs' Opp. at 16-18.

Such claims, based on a failure to act, do not and cannot be held to state a takings claims under the Fifth Amendment which specifically calls for a defined government "action" as the basis for any such claims, and a failure to act is by definition not such an action. This court has discussed a similar claim of an alleged taking by inaction, saying:

> Plaintiff cites no precedent, however, for the proposition that the inaction of a regulatory body in carrying out its statutory duty... has ever been held to be a taking. . . The one common denominator in cases finding a taking is that there was a public purpose animating some affirmative action or statement, whether that purpose finds expression in a regulation for health and safety, a physical entry, a confiscation, or a land use restriction. This requirement is no more than a reflection of the fifth amendment itself, which is predicated on a taking for "*public use"*.

Last Chance Mining Co. v. United States, 12 Cl. Ct. 551, 556-57 (1987) (underlined emphasis added). Previous decisions of this Court have also made clear that "the Government must take some affirmative action for a

takings claim to be successful." B&G Enterprises, Ltd. v. United States, 43 Fed. Cl. 523, 526-27 (1999). See also Alost v. United States,73 Fed. Cl. 480 (2006) (noting that a "plaintiff seeking to establish a government taking of an easement by flooding must also demonstrate. . . that there was a 'governmental act . . .'")(quoting Barnes v. United States, 538 F.2d 865, 870 (Ct. Cl.1975)) (emphasis added); Pendleton v. United States, 47 Fed. Cl. 480 (2000) (rejecting a takings claim in the context of a state-federal program alleged to have effected a taking because the plaintiffs failed to identify an "affirmative action" by the federal government "sufficient to support a takings claim under the Fifth Amendment."). Accordingly, to the extent Plaintiffs' claims rely on allegations that Defendant failed to properly design the floodwalls or failed to sufficiently protect Plaintiffs' property, Defendant is due judgment as a matter of law. These types of allegations fall squarely within the law of torts, and the Federal Tort Claims Act ("FTCA"), which specifically waives sovereign immunity for "acts and omissions" by Government employees. See 28 U.S.C. 1346(b)(1).

There is a second reason that Plaintiffs' defective design claims can be made only under the law of torts. The "defective design" to which Plaintiffs repeatedly refer, Compl. at ¶¶ 9, 10, 11, 12, 46; Pltfs' Opp. at 9,

12-14, is a creature of products liability law, which is itself a branch off the tort-law tree. See, e.g., Rest. (Third) of Torts: Products Liability at § 2.

We respectfully note that judgment for Defendant in this case will not prevent these three plaintiffs from obtaining judicial review of their claims. They can still file an administrative claim under the FTCA and if it is denied, file suit in the District Court in Louisiana. Many other similarly situated landowners in Louisiana have already done this. See Katrina Canal Breaches Consolidated Litigation, http://www.laed.uscourts.gov/CanalCases/Intro.htm (last visited February 6, 2007). This Court is requested to take judicial notice of the fact that there are now pending in the United States District Court for the Eastern District of Louisiana many hundreds of cases against the United States under the FTCA alleging that the United States is liable for damages from flooding due to Hurricane Katrina which have largely been consolidated before one judge. See id. The hundreds of attorneys representing several hundred claimants in those cases, as evidenced by the docket report in that matter,[1/] is strong evidence

---

[1/] Defendant has not provided a full copy of this docket sheet because it is approximately 600 pages in length. However, it is available on the Eastern District of Louisiana's Pacer website found at http://www.laed.uscourts.gov/CanalCases/CanalCases.htm (last visited February 6, 2007).

of the extent of that litigation. It is interesting to note, however, that none of those plaintiffs have sought recovery from the United States in this Court on Fifth Amendment takings grounds.

### 1. Plaintiffs Have Not Supplied Facts that Would Give Rise to a Fifth Amendment Takings Claim.

As discussed in our opening brief, Plaintiffs must prove that their injuries were in fact caused by a specific action of Defendant or its agencies. Def's Mot. at 14-15; Moden, 404 F.3d at 1343. This amounts to a requirement that the Plaintiffs show "that [a] government act was the likely cause of the[ir] injury." Banks v. United States, 69 Fed. Cl. 206, 212 (2006). Two factors, neither of which have been addressed by Plaintiffs in their Opposition, preclude a finding that a government action was the likely cause of Plaintiffs' damages.

First, Plaintiffs cannot show, as they must, that the flooding of their property was caused, in fact, by any of action by the Federal Government or by a Federal agency. See B&G Enterprises, 43 Fed. Cl. at 526-27. Rather, every scenario conceived of by Plaintiffs in their Complaint and in their Opposition memorandum is based upon the occurrence of a "significant hurricane," a natural event not under the control of the

Defendant, to push storm surges onto Plaintiffs' properties. See, e.g., Compl. at ¶¶ 11, 14,17, 38, 40; Pltfs' Opp. at 16-18.

The actual and indisputable facts in this case show that the affirmative actions taken by the United States Army Corps of Engineers (the "Corps") were designed to, and intended to, provide a certain level of protection from hurricane effects. See Def's Ex. A at ¶¶ 15-18. Both the levee system along Lake Pontchartrain and the addition of flood walls on the interior canals were part of a federal effort to enhance protection from damages from hurricanes in the New Orleans area - but were not, and could not have been, a guarantee to local residents that they would not suffer such damages.[2/] See id. No federal law ever purported to guarantee residents that the measures that were taken at federal expense would prevent all damages from severe storms. Plaintiffs' claims, however, reduced to their essentials, are effectively claiming a right to such a guarantee - or a right to have the federal government pay damages if the measures it took did not provide full and total protection against all natural

[2/] In fact, it is indisputable that had the floodwalls not been in place, Plaintiffs' properties would have experienced flooding sooner and to a larger extent than was otherwise experienced. Most of the New Orleans area is at or below sea level and occupation of those areas would not have been consistently possible without the floodwalls.

events.

Plaintiffs have not, and cannot, show that the flooding of their property was likely, much less directly, caused by the government's efforts to provide some level of protection against hurricane damages or by the efforts to increase such protections by the addition of flood walls to preexisting levees built by local governmental entities. See Banks, 69 Fed. Cl. at 212; Brace, 72 Fed. Cl. at 362.

Further, Plaintiffs have failed to demonstrate that the Corps had, or could have had, any control whatsoever over the winds and storm surges propagated by Hurricane Katrina. In the flooding easement cases with which this Court is familiar, there was always an element of control that the United States had over flood water, either by creating an impoundment or operating a dam so as to alter water flows. In the present case, however, the Corps had no ability to control or influence these storm-produced effects. And since the Corps had no control over such effects, it is manifestly clear that those effects cannot be construed as flowing from a governmental action. Thus, Plaintiffs have failed to show that their flooding was the natural and probable result of prior governmental actions in constructing floodwalls.

Plaintiffs try to support their claims by citing Tri-State Materials Corp. v. United States, 213 Ct. Cl. 1, 550 F.2d 1 (1977), for the proposition that Defendant can be held liable for a taking in cases where flood waters are not controlled by government action. Pltfs' Opp. at 9. Tri-State, however, cannot be read to encompass that notion because the case did, in fact, involve waters controlled by a government action. In Tri-State, defendant built a lock and dam project on a river. 550 F.2d at 2. In finding for the plaintiff, the Tri-State court specifically held that the water in the lock and dam, water under the control of the defendant, raised the groundwater table in the area, preventing deep drainage of water and leading to the plaintiff's damages in that case. Id. at 4. Accordingly, it is clear that Tri-State cannot be read to support an award of compensation for flood damages incurred as a result of water that was in no way under government control.

Demonstrating causation is not, however, the only hurdle for Plaintiffs under the direct, natural or probable prong of the tort-taking inquiry. See Banks, 69 Fed. Cl. at 212. They must also show that Defendant "should have predicted or foreseen the resulting injury." Moden, 404 F.3d at 1343. Plaintiffs' Opposition does little to meet this standard and nothing to rebut

Defendant's argument that Hurricane Katrina was an unforeseeable causative factor that intervened between any action taken by Defendant and Plaintiffs' ultimate injuries. Def's Mot. at 11-13. Moreover, despite their efforts, Plaintiffs cannot dispute the unusual intensity of Hurricane Katrina or the fact that its winds and waves of that massive storm generated nearly unprecedented storm surge. See Def's Ex. B. In Moden, the Federal Circuit advised that an "injury may not be foreseeable if an intervening cause breaks the chain of causation." 404 F.3d at 1343. Here, Hurricane Katrina was the intervening cause between any action taken by the government and Plaintiffs' ultimate injuries.[3] Therefore, Plaintiffs cannot show that their injuries were the foreseeable result of a government action.

Failing to show that a government action was the likely cause in fact of their injuries, or that such injuries were the foreseeable result of a government action, Plaintiffs then have not shown that their injuries were the direct, natural or probable result of a government action or that their

[3] Plaintiffs incorrectly assert that evaluating whether Hurricane Katrina was foreseeable is a red herring. Pltfs' Opp. at 11. A foreseeability evaluation is obviously necessary in order to discern whether the storm was an "unforeseeable intervening cause" sufficient to cut-off any potential liability of Defendant. See Def's Mot. at 17.

claims are due treatment under takings law. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1356 (Fed. Cir. 2003); Moden, 404 F.3d at 1342. It follows that the jurisdiction of this Court cannot appropriately be exercised in this matter and Defendant should be granted judgment as a matter of law. Id.

2. Any Governmental Interference Was Not Substantial or Frequent.

The second prong of the tort versus taking inquiry "requires the court to consider whether the government's interference with any property rights of [plaintiffs] was substantial and frequent enough to rise to the level of a taking." Ridge Line, 346 F.3d at 1357. In Ridge Line, the Federal Circuit noted that "[g]overnment-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort." Id. at 1355 (quoting Barnes v. United States, 210 Cl. Ct. 467, 538 F.2d 865, 870 (1976)). The Federal Circuit has also held that "'isolated invasions such as one or two floodings . . . do not make a taking . . . , but repeated invasions of the same type have often been held to result in an involuntary servitude." Id. at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)).

Plaintiffs' Opposition does little more than continue to allege that the

properties in question are subject to inevitably recurring floods as a result of a perceived design defect in the floodwalls in question. Pltfs' Opp. at 17. Plaintiffs assertion is both legally and factually[4] incorrect. In Berenholz v. United States, 1 Cl. Ct. 620, 626 (1982) the court recognized that "inevitable recurrence" cannot be demonstrated, and as a result a taking suit cannot be maintained, where "'a random event induced more by an extraordinary natural phenomenon than by Government interference . . .'" was the cause of damage to a plaintiff's property. Id. (quoting Wilfong v. United States, 202 Ct. Cl. 616, 622 (1973)). This is true even when any "permanent damage to the property [is] partially attributable to Government activity." Id.

As discussed in our initial memorandum, Def's Mot. at 18, this maxim was more recently affirmed by the Court of Federal Claims in Teegarden v. United States, 42 Fed. Cl. 252 (1998). In that case, the court noted that "[i]n the context of a claim for inverse condemnation, damages resulting

[4] While Plaintiffs ask the Court to assume that the conditions that led to the flooding still exist in the area, they fail to advise the Court that, in fact, the Corps has undertaken and completed significant repairs to the interior levees and floodwalls and have installed new floodwalls of a different design to prevent the type of failure that occurred during Hurricane Katrina. See Declaration of Lieutenant Colonel Murray P. Starkel, attached as Defendant's Exhibit C.

from a random event induced more by an extraordinary natural phenomenon than by Government interference cannot rise to the level of a compensable taking even if there is permanent damage to property partially attributable to Government activity." Id. at 257 (quoting Berenholz, 1 Cl. Ct. at 626 (quoting Wilfong, 202 Ct. Cl. at 622)(internal quotations omitted). Similarly, here any flooding or flood damage done to Plaintiffs' properties was the result of an "extraordinary natural phenomenon . . .," rather than some government action, and thus cannot give rise to a compensable taking. Teegarden, 42 Fed. Cl. at 257; Berenholz, 1 Cl. Ct. at 626; Wilfong, 202 Ct. Cl. at 622.

Because Plaintiffs have not established that the flooding of their properties will inevitably recur, their claim must fail. As a matter of law, judgment should be entered in favor of Defendant because Plaintiffs' claims, for flooding which is not inevitably recurring, at most, sound in tort and are outside the jurisdiction of this Court. See, e.g., Moden, 404 F.3d at 1432; see also Ridge Line, 346 F.3d at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)); Singleton v. United States, 6 Cl. Ct. 156, 162 (1984).

3. Plaintiffs' Erroneous Construction of the Causation Factor

Plaintiffs construction of the standard that should be used in evaluating the direct, natural and probable prong of the tort-taking test is incorrect. Initially, Plaintiffs rely on language from Cotton Land Co. v United States, 109 Ct. Cl. 816, 75 F.Supp. 232 (1948), to establish that flooding that results through "a chain of events occurring in a natural order . . . but originally set in motion . . ." by a government action may be treated as a taking. Id. at 233. However, the facts of this case and Cotton Land bear so little resemblance that the comparison is basically fruitless.

Cotton Land involved a classic Fifth Amendment taking by flooding fact pattern. The government erected a dam across a river which, of course, had the effect of creating a lake. Id. That lake decreased the speed of the river, causing increased sand build-up and raising the river's elevation. Id. The rising river ultimately overflowed its banks and flooded the plaintiffs' land. Id. In that case, this Court's predecessor denied a "remoteness of cause" defense because it was apparent that the creation of the dam led, in a "natural order" to the slowing of the river, the increased deposit of sand, the river's ultimate rise and the eventual flooding of the plaintiffs' lands. Id. Applied to the facts of this case, the same analysis

serves as a foil to demonstrate how ill-suited Plaintiffs' claims are to the takings realm. Here, Defendant placed floodwalls on existing levees. Def's Ex. A at ¶¶ 13, 15. A decade passed with no flooding of Plaintiffs' property and then a phenomenally powerful storm, pushing some of the highest surges ever seen on the Gulf Coast, Pltfs' Ex. A at I-20; Pltfs' Ex. I at I-69, inundated the New Orleans area and overwhelmed the floodwalls, causing the flooding of the city. This was not an example of water which was flowing in its "natural order" resulting in a flood. Rather, this was the case of an extraordinary storm event causing a flood.

Because Plaintiffs' analysis of the relevant test is flawed, their Opposition does little, if anything, to meet their burden of establishing that they have properly invoked the jurisdiction of this Court. Accordingly, Defendant is due judgment as a matter of law.

**B. Plaintiffs' Opposition Memorandum Fails to Meet Their Burden of Proof As to Each Element of Their Claim.**

In their Opposition, Plaintiffs attempt to paint Defendant as somehow obscuring or distorting the facts of this case. Pltfs' Opp. at 2-6. As our opening memorandum made clear, and as we demonstrate here, the facts of this case are not in dispute and dictate the entry of judgment in favor of Defendant.

Many of Plaintiffs' factual assertions result from the use of facts taken out of context. For instance, in their continued effort to downplay the sheer force of Hurricane Katrina, Plaintiffs relate that the winds of the storm were in the Category 1 to Category 3 range on the Saffir-Simpson scale when the storm struck New Orleans. Pltfs' Opp. at 2. Plaintiffs further claim that Hurricane Katrina was a "weak Category 3 hurricane . . .," despite the fact that their cited source simply calls the storm "a Category 3 storm at landfall . . . ." Id. (citing Pltfs' Ex. A at I-21; Pltfs' Ex. I at I-69). They continue on to detail the flooding of the city while failing to mention that the storm surge associated with Hurricane Katrina was "substantially higher" than the surge associate with Hurricane Camille, a Category 5 storm. Pltfs' Opp. at 3; Pltfs' Ex. A at I-21; Pltfs' Ex. I at I-69. They also fail to note that while the Saffir-Simpson is a "good predictor of wind damage from hurricanes, it is not a particularly good predictor of the surge and wave generation potential for these storms." Id. Another notable factual omission is that rainfall accounted for "at least 20% of the total volume of water that flooded the New Orleans Metropolitan area." Pltfs' Ex. A at I-21; Pltfs' Ex. I at I-33. Plaintiffs' provision of this distorted picture is especially troubling given that the damage done by the storm's floodwaters, and not its winds, is at the

very core of Plaintiffs' claims. See Pltfs' Opp. at 16-18. Despite Plaintiffs' efforts to minimize the storm and its central importance to this case, nothing in their Opposition refutes the fact that Hurricane Katrina was "an extraordinarily powerful" storm and the cause of Plaintiffs' injuries. Def's Ex. B at 1.

Plaintiffs also use quotes taken out of context in an attempt to create an issue over the construction of the levees at issue in this case. Pltfs' Opp. at 4. As detailed in our opening memorandum, the hurricane protection systems at issue in this case are composed of two components. First, each of the canals at issue is lined by an earthen berm called a levee. See Def's Ex. A at ¶ 7. Second, each of those levees was supplemented by the placement of a floodwall on the top of the earthen mound. Id. at ¶¶ 13, 15. While the Corps did in fact build some of the floodwalls, and has admitted such action, Def's Mot. at 4, it is indisputable that it did not construct the earthen levees involved in this case. This fact is not at all in conflict with the portions of the Interagency Performance Evaluation Task Force Report ("IPET") and the Independent Levee Investigation Team Report quoted by Plaintiffs. Pltfs' Opp. at 4.[5/] Defendant's brief and the

---

[5/] The Corps did construct the levees along Lake Ponchartrain, but the levees at issue in this case were along interior drainage canals which were

Declaration of Lieutenant Colonel Starkel provide the definition of the "project" referenced in the IPET. Def's Mot. at 4; Def's Ex. A at ¶¶ 13, 15. The project encompassed the placement of floodwalls on top of already existing levees in the New Orleans area. Id. It follows that Defendant's statement that it did not construct the levees in question has not been disputed.

Equally puzzling is Plaintiffs' assertion that Defendant is attempting to avoid responsibility by foisting it onto third-party contractors who worked for the Corps on the floodwall project. Pltfs' Opp. at 5. Defendant simply never made any such assertion. Rather, Defendant, in trying to give the Court a more complete picture of this case, provided a more complete history of the canals than was otherwise available from Plaintiffs' Complaint. This necessarily included discussing the indisputable fact that the levees in question were built by state and local entities, and not by the Corps.

## II. DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

---

built by local levee districts. See Def's Ex. A. The only Corps involvement with these levees was an effort in the late 1990's to add to the protection afforded by those structures by adding flood walls on top of some of those levees. Id.

Plaintiffs' Opposition purports to also be a Cross Motion for Summary Judgment. However, as discussed above, Plaintiffs' have failed to identify a claim within the jurisdiction of this Court. See infra at 5-13. Further, even if they had alleged such a claim, which we deny, Plaintiffs submissions do not provide undisputed facts to the Court. In Defendant's view all of the supporting declarations filed by Plaintiffs fail to raise a factual issue since they either consist of opinions unsupported by any factual evidence or assertions by the property owners that have not been shown to be within their competence. Accordingly, Plaintiffs' Cross Motion for Summary Judgment must, as a matter of law, be denied in all respects.

## III. CONCLUSION

As we have demonstrated in our opening memorandum and in this reply, Plaintiffs have failed to state a valid claim for a Fifth Amendment taking and have failed to meet their burden of proof in any event. Instead, Plaintiffs seek to invoke the jurisdiction of this Court over claims sounding, at most, in tort. Because such claims are outside the jurisdiction of this Court, Defendant is entitled to summary judgment dismissing the complaint in this case as a matter of law.

Respectfully Submitted this 6th day of February, 2007.

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

s/ Fred R. Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SHEILA NICHOLSON, and** | ) | |
| **SHELLEY NICHOLSON, and** | ) | |
| **RICHARD HIRSTSUS** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | **NO. 05-1259IL** |
| **vs.** | ) | |
| | ) | **Hon. Lawrence M. Baskir** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S UPDATED CONSOLIDATED STATEMENT OF UNCONTROVERTED FACTS**

**UNCONTESTED FACTS**

**1.**

**On August 29, 2005, the eye of Hurricane Katrina passed approximately twenty miles east of New Orleans. Pltfs' Ex. B at 7-8; Def's Ex. B at 7-8.**

**2.**

**The IHNC and its lock were incorporated into the Federal navigation project, the Gulf Intracoastal Waterway (GIWW) and continues to serve as apart of that navigation system to the present. Def's Ex. A at ¶ 6.**

## PLAINTIFFS' PROPOSED FACTS

### 3. (P)

**Four I-wall failures that resulted in breaches and very significant flooding occurred in the morning of August 29, 2005. P. Ex. A at p. I-30; Pl. Ex. 1 at p. I-66 (p.96).**

Disputed as stated. This statement lacks proper context and Plaintiffs' use of the general term "failure" lacks specificity. The report of the Interagency Performance Evaluation Team ("IPET"), the source upon which Plaintiffs' assertion rests, gives a more specific description of what may have occurred in the outfall canals:

> Four breaches, all in the outfall canals and IHNC and all involving I-walls, occurred before water levels reached the top of the floodwalls. All were caused by foundation failures induced by the formation of a gap along the canal side of the floodwall. All of these structures were built over a layer of marsh sediments, in two cases underlain by clays and in the other two underlain by relict beach sand deposits. The subsurface conditions dictated the specific mechanics that, coupled with the high hydrostatic pressures introduced to depth by the gap along the fact of the sheet pile, led to the instability and failure. The sites underlain by sand experienced significant seepage and in one case a massive piping of subsurface sand from under the levee to the protected side, undermining the floodwall. The formation of the gap and the associated hydrostatic pressures introduced at depth resulted in a significant reduction of the factor of safety of the structure. This failure mechanism, in particular the gap formation, was not considered in the original design of these structures.

Pltfs' Ex. I at I-64.

Defendant further notes that while the Plaintiffs have adduced the IPET report as evidence supporting their factual assertions, the portion offered by Plaintiffs as Exhibit A, is, by its terms, only a draft and subject to revision. It follows that the conclusions of the report are not entirely reliable as evidence. Additionally, the IPET report has not been endorsed by the United States, the Corps of Engineers, which commissioned it, or by any other governmental or private sector organization. The citation of it by the United States in this document is solely for the purpose of revealing that Plaintiffs' proffered facts are not entirely supported by Plaintiffs' own evidence; it is not intended to be and should not be construed as an endorsement of the IPET report or the contents thereof.

Given the related litigation ongoing in the Easter District of Louisiana, the reliability of the IPET report is conceded for the purposes of the pending motion for summary judgment only.

**4. (P)**

**The I wall ~~failures~~ resulted in breaches of the walls and levees. Pl. Ex. A at p. I-30; Pl. Ex. I at I-47 (p. 77) and I-66 (p. 96).**

Disputed as stated. See Response to No. 1.

**5. (P)**

**~~The breaches caused by the I wall failures flooded the City of New Orleans.~~ Pl. Ex. A at p. I-30; Pl. Ex. I at I-47 (p. 77).**

This statement is disputed because it is misleading. It implies that the four breaches on the three canals were responsible for the entire flooding of New Orleans. This is untrue. The IPET report, upon which Plaintiffs' allegation rests, states that there were fifty other breaches in the area which, along with rainfall, contributed to the flooding of the city. Pltfs' Ex. A at I-7; Pltfs' Ex. I at I-3, I-41.

**6. (P)**

**Nearly 80% of the city was inundated by flood waters. Pl. Ex. A at p. I-30; Pl. Ex. I at I-48 (p. 78).**

Defendant disputes this statements because it implies that 80% of the city was flooded solely by waters flowing through breaches on the three canals. See, e.g., Pltfs' Ex. A at I-7, I-36; Pltfs' Ex. I at I-3, I-41. According to Plaintiffs' proffered evidence this is untrue. See Response to No. 3.

**7. (P)**

**The flood waters caused ~~permanent~~ damage to property in New Orleans. Def. Motion for Summary Judgment at p. 18. Pl's Ex. G at pps. 22, 25.**

Defendant disputes this statement because the damage to Plaintiffs' property is remediable and not permanent. Additionally, Plaintiffs have offered no evidence to support this statement.

**8. (P)**

**The cause of the permanent damage was defectively designed flood walls. Pl. Ex. G at p. 11.**

Defendant disputes this statement for the reasons set forth in response to statements number 3 and 5.

**9. (P)**

**~~The U.S. Army Corps of Engineers was responsible for the design and construction of the flood walls.~~ Pl. Ex. A at p. I-16; Pl. Ex. I at I-26 (p. 56); Pl. Ex. C at 12-3**.

Defendant disputes this statement because it was only responsible for the design and construction of some of the floodwalls. Def's Ex. A at ¶ 19.

**10. (P)**

**~~A category three hurricane under the Saffir Simpson Scale is roughly equivalent to the standard project hurricane (SPH) that the Corps' was directed to consider in designing the flood walls.~~ Pl. Ex. A at p. I-16; Pl. Ex. I at I-26 (p. 56).**

Defendant denies this statement. The SPH was a hypothetical storm developed before the use of the Saffir-Simpson scale. The hypothetical storm had a forward speed of 6 knots, maximum wind velocity of 100 miles per hour, a central pressure of 27.6 inches and a radius of 30 nautical miles. Def's Ex. A.

**11. (P)**

**The storm surge created by Katrina was within project design. Pl. Ex. C at p. 12-12, 12-13.**

Defendant dispute this statement because it is not accurate. The IPET report, relied upon by Plaintiffs, notes that "Hurricane Katrina generated water levels that for much of the system significantly exceeded the design criteria." Pltfs' Ex. A at I-6; Pltfs' Ex. I at I-63.

**12. (P)**

**~~The breaches occurred before water levels exceeded project design.~~ Pl. Ex. A at p. I-7, I-30; Pl. Ex. I at I-65 (p. 95); Pl. Ex. E at p. 2.**

Defendant disputes this statement. While the IPET report, which was relied upon by Plaintiffs, does state that the breaches in the three canals occurred before the walls were overtopped, it also states that breaches "along the west side of the IHNC" were induced by overtopping. Pltfs' Ex. A at I-7; Pltfs' Ex. I at I-65. The statement also fails to reflect that the floodwalls were not designed to withstand a storm surge of the magnitude caused by Hurricane Katrina.

**13. (P)**

**The failure mechanism of the flood walls was not considered in the original design of the structures. Pl. Ex. A at p. I-39 (p.74); Pl. Ex. I at I-59 (p.89).**

See Response to No. 1.

**14. (P)**

~~**Had the Corps designed flood walls consistent with the Corps statutory obligation, the flooding in New Orleans would have been substantially less.**~~

Defendant disputes this statement. Plaintiffs have not offered any evidence that the flooding of New Orleans would have been less if the Corps had complied with the alleged statutory obligation. Indeed, if the floodwalls had not been built in the 1990s, there would likely have been greater flooding because the storm surge levels in the canals were higher than the heights of the levees. Accordingly, water would have flowed unimpeded over these levees.

**15. (P)**

**Two- thirds (2/3) of the flooding of the City of New Orleans was attributable to water flowing through the breaches. Pl. Ex. A at p. I-7; Pl. Ex. I at I-3 (p.33).**

This statement is denied. See Response to No. 3.

**16. (P)**

**~~The Corps could foresee that the flood walls would break under conditions they were designed to withstand.~~ Pl. Ex. C at p. 12-7.**

Defendant disputes this statement because it is not a fact but a legal conclusion. The walls were not designed to protect against a storm sure of the magnitude created by Hurricane Katrina.

**17. (P)**

**~~The Corps could foresee that, in the event of such a breach, Plaintiffs property would be inundated and devalued by the absence of secure protection.~~ Pl. Ex. C at p. 12-10.**

Defendant disputes this statement because it is not supported by any probative or admissible evidence.

**18. (P)**

**The basic flaws in design of the levee protection system was first recognized over two (2) decades before Hurricane Katrina. Pl. Ex. E at p. 12-7.**

Defendant disputes this statement. The IPET report, one of Plaintiffs' exhibits, states that "[t]here was no evidence of government or contractor negligence or malfeasance. With the exceptions noted below, the system was generally built as designed, and design approaches were consistent with local practice." Pltfs' Ex. A at I-5; Pltfs' Ex. I at I-61.

**19. (P)**

**The Corps recognized problems with the design of these structures years before Hurricane Katrina. Pl. Ex. C at p. 12-14.**

Defendant disputes this statement. Plaintiffs have not produced any factual evidence to support this statement.

**20. (P)**

**~~The storm of the size and strength of Katrina was predictable.~~**

This statement is denied. Plaintiffs have not provided any evidence that this is true. The objective facts of this case, as found in Defendant's Exhibit B and Plaintiffs' Exhibit B, show that Hurricane Katrina was the fourth strongest hurricane ever recorded in the Atlantic (later the sixth strongest after Hurricanes Rita and Wilma surpassed it) and had the largest storm surge of any storm to hit the New Orleans area. Def's Ex. B at 6, Pltfs' Ex. B at 6.

**21. (P)**

**~~All of the conditions responsible for the breaches were known and foreseeable in advance of these failures.~~ Pl. Ex. F at p. 5.**

Defendant disputes this statement. See Response to Nos. 14-17.

**22. (P)**

**~~These were predictable failures.~~ Pl. Ex. F at p. 5.**

Defendant disputes this statement. The only backing Plaintiffs have for this statement are the opinions of one author, unsupported by any factual evidence, that were incorporated into the report of the Independent Levee Investigation Team (ILIT). Further, the actual phrase used by the author was the paradoxical statement that these were "predictable surprises." Pltfs' Ex. C at 12-10; Pltfs' Cross Motion at 12.

**23. (P)**

**~~In 1990, the Vicksburg office of the Corps of Engineers noticed design problems but did nothing.~~ Pl. Ex. E.**

Defendant disputes this statement because Plaintiffs' do not specify what the alleged "design problem" was.

**24. (P)**

**The Corps knew, could and should have foreseen, that in the event of a major hurricane, the levees would fail resulting in catastrophic human suffering, loss of life and property loss. Pl. Ex. E at p. 1.**

Defendant denies this statement. See Responses to Nos. 3-24.

**25. (P)**

**The Corps admitted that the probability of failure of flood walls and some sections of levees were high, and there was a great potential for serious consequences because of the large population and extensive property being protected by the structures. Pl. Ex. A at p. I-39; Pl. Ex. I at I-59 (p. 89).**

Defendant disputes this statement. It was taken out of context from Plaintiffs' cited source. The IPET report notes that "the risk prior to Katrina was significant, in part, because New Orleans is mostly below sea level . . . ." Pltfs' Ex. A at I-39; Pltfs' Ex. I at I-59.

**26. (P)**

**~~An extraordinary storm did not cause the damage, but rather, a known design failure did.~~ Pl. Ex. A at p. I-39; Pl. Ex. I at I-59 (p. 89).**

Defendant denies this statement. The clear evidence establishes that it was the storm surge from Hurricane Katrina that caused flooding in New Orleans. Def's Ex. B at 9-10; Pltfs' Ex. A at I-6; Pltfs' Ex. I at I-62; Pltfs' Ex. B 9-10.

**27. (P)**

**~~The property damage to the property in New Orleans was foreseeable and foreseen.~~ Pl. Ex. C at p. 12-14.**

Defendant disputes this statement for the reasons stated above. See Response to Nos. 3-24.

**28. (P)**

**~~The damage caused by the flooding in New Orleans as a result of the breaches in the flood walls was induced more by the Corps of Engineers actions than by an extraordinary natural phenomenon.~~**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that the flooding of New Orleans was due to actions of the Corps.

**29. (P)**

**~~But for the defective designs of the flood walls, damage to New Orleans would have been minimal~~.**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that the flooding of New Orleans would have been minimal but for the allegedly "defective design" of the flood walls.

Indeed, the meteorological evidence show that the level of water from the storm surge would have overtopped all of the levees on the three canals if the floodwalls had not been built, so the amount of flooding could have been even greater in that event.

**30. (P)**

**~~The Corps' defectively designed the flood walls imposed consequences that have preempted Plaintiffs' right to enjoyment of their property for an extended period of time.~~ Def. Motion for Summary Judgment at p. 18; Pl's Ex. G pps. 22, 25.**

Defendant disputes this statement because it erroneously assumes that the Corps defectively designed the floodwalls and also fails to reflect that Plaintiffs have not been denied use of their property. Plaintiffs may have, at most, sustained structural damage which is repairable and there is no evidence that any damage will recur in the future. Rather, the Corps has taken action to prevent the type of breaches that occurred in the wake of Hurricane Katrina. See Def's Ex. C at 4-5; Pltfs' Ex. A at I-iii, I-39; Pltfs' Ex. I at I-59.

**31. (P)**

**~~Plaintiffs cannot acquire the fair values for their property because of the perceived lack of capable protection provided by the flood walls.~~ Pl. Ex. H *in globo*.**

Defendant disputes this statement. Plaintiffs have not established it with any evidence.

**32. (P)**

**~~The Corps' designed flood walls has created a safety hazard for property in New Orleans.~~ Pl. Ex. A at p. I-39; Pl. Ex. I at I-59 (p. 89).**

Defendant disputes this statement. There is no evidence to support it.

**33. (P)**

**~~The safety hazard so created has caused permanent damage.~~ Pl. Ex. A at p. I-39; Pl. Ex. I at I-59 (p. 89).**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that there is a safety hazard. In fact, the evidence suggests otherwise. See Def's Ex. C at 4-5; Pltfs' Ex. A at I-iii; I-39; Pltfs' Ex. I at 59.

**34. (P)**

**The flooding was ~~the direct, natural and probable~~ result of an authorized activity of the Corps of Engineers.**

Defendant disputes this statement. The evidence does not support such a conclusion. The flooding was caused by a natural event, i.e. storm surge, which was beyond the capability of the hurricane protection system to prevent.

**<u>DEFENDANT'S PROPOSED FACTS</u>**

**35. (D)**

**The Corps' involvement in hurricane protection for the City of New Orleans has been limited. Def's Ex. A at ¶¶ 4-8.**

Contested. This is a conclusion, not a fact.

**36. (D)**

**The Corps' involvement in hurricane protection for the City of New Orleans is of relatively recent origin. Def's Ex. A at ¶¶ 4-8.**

Contested. This is a conclusion, not a fact.

**37. (D)**

**Levees to protect New Orleans from flooding from a storm surge resulting from hurricanes or tropical events have long been in existence. Def's Ex. A at ¶ 8.**

Contested. This is a conclusion, not a fact.

**38. (D)**

**The construction of the levees was in many cases undertaken by State and Local agencies, not by the Corps itself. Def's Ex. A at ¶¶ 5-7.**

Statement is not material.

**39. (D)**

**The responsibility of operating and maintaining the levees after their construction rested with State and Local agencies, not by the Corps itself. Def's Ex. A at ¶ 15,19; Pltfs' Ex. C at 12-1.**

Statement is not material. The Corps was responsible for design and construction of the floodwalls. The design problems caused the majority of flooding in New Orleans. The reference to levees is misleading.

**40. (D)**

**The 17th Street Canal was initially constructed as a component of a railroad project. Def's Ex. A at ¶ 5.**

Statement is not material.

**41. (D)**

**The London Avenue Canal was initially a privately constructed avenue for local commerce. Def's Ex. A at ¶ 4.**

Statement is not material.

**42. (D)**

**The Inner Harbor Navigational Canal ("IHNC") was built by the local government as a toll facility to allow navigation between the Mississippi River and Lake Pontchartrain. Def's Ex. A at ¶ 6.**

Statement is not material.

**43. (D)**

**The 17th Street and London Avenue Canals were adapted by local governmental authorities to serve as interior drainage facilities, a use continued by local governments to the present. Def's Ex. A at ¶ 7.**

Statement is not material.

**44. (D)**

**The earthen base of a flood protection system is called a levee. Def's Ex. A ¶ 7.**

Contested, it is unclear to what the words "flood protection system" refer. Otherwise, a levee has been so defined.

**45. (D)**

**A floodwall is a wall attached to a length of steel that has been driven into the ground.**

Denied, a floodwall has many components, one of which is a length of steel and sometimes, a concrete wall.

**46. (D)**

**The Corps' involvement on the canals in question was primarily limited to the design and placement of floodwalls on top of some of these already existing levees. Def's Ex. A at ¶¶ 7, 15 and 19.**

Denied, the Corps was responsible for construction and design of the floodwalls.

**47. (D)**

**Hurricane Katrina was "an extraordinarily powerful and deadly hurricane that carved a wide swath of catastrophic damage . . . ." Def's Ex. B at 1.**

Statement is not material. It is taken out of context. The floodwall failures was the cause of most the damage to the City of New Orleans.

**48. (D)**

**As it passed through the open waters of the Gulf of Mexico, Hurricane Katrina was rated as a Category 5 storm on the Saffir-Simpson hurricane scale. Def's Ex. B at 1.**

Statement is not material. The storm hit New Orleans with winds less than category 3 strength.

**49. (D)**

**~~At the time Hurricane Katrina struck New Orleans it was still a powerful "high-end Category 3 hurricane . . . ."~~ Def's Ex. B at 6.**

This is denied. The actual quote referred to by the U.S. is "the aircraft data from 29 August indicate that the structural changes in Katrina were associated with its rapid weakening to a high end Category 3 hurricane just before landfall in Louisiana." Def Ex. B at p. 6; Pls Ex. B at p. 6. Landfall in Louisiana was at Buras, Louisiana, some 50 miles south of the city.

The winds from Hurricane Katrina at the time it struck New Orleans were not Category 3 strength. Pl's Ex. B at p. 8.

**50. (D)**

**The size and strength of the storm created a storm surge of ten to fourteen feet along the southern shore of Lake Pontchartrain, ~~and into the three canals at issue in this case~~. Def's Ex. B at 9.**

A storm surge of ten to fourteen feet was created along the southern shore of Lake Pontchartrain, but did not enter the three canals at issue but all floodwalls on the three canals failed before water levels achieved the height set forth. The maximum height in the 17th Street Canal was 7 feet. The London Avenue floodwalls were never overtopped. Pl's Ex. A at p. I-7.

**51. (D)**

**The floodwalls installed in the interior drainage canals in the 1990s were intended to increase the level of protection provided for New Orleans against hurricanes. They were not designed to prevent all damage from hurricanes or flooding but only that attributable to the SPH. Without the protection afforded by the floodwalls, the flooding of New Orleans that occurred as a result of the storm surge of Hurricane Katrina would likely have been even greater since the surge levels were higher than the tops of the preexisting levees. Without the floodwalls, flood waters would have flowed without resistance into the flooded areas at issue in this case.**

Contested. This is a conclusion, not a fact. To compare possible damage without floodwalls is inappropriate since the Defendant was charged with designing and constructing floodwalls which were supposed to withstand water levels that they experienced before, during and after Katrina.

**RESPECTFULLY SUBMITTED:**
**LOWE, STEIN, HOFFMAN, ALLWEISS & HAUVER, L.L.P.**

**BY: s/ Mitchell J. Hoffman by Mark T. Romley**
**MITCHELL J. HOFFMAN, Trial Attorney**
**MICHAEL R. ALLWEISS**
**HILARY HURST LANDRY**
**JEFFREY M. HOFFMAN**
**701 Poydras Street, Suite 3600**
**New Orleans, Louisiana 70139-7735**
**Telephone: (504) 581-2450**
**Attorneys for the Plaintiffs**

**MATTHEW J. MCKEOWN**
**Acting Assistant Attorney General**
**Environment and Natural Resources Division**

**BY: s/ Fred R. Disheroon by Mark T. Romley**
**FRED R. DISHEROON, Special Litigation Counsel**
**MARK T. ROMLEY, Trial Attorney**
**Natural Resources Section**
**Environment and Natural Resources Division**
**U.S. Department of Justice**
**601 D. St. N.W., Room 3022**
**Washington, D.C. 20004**
**Telephone: (202) 616-9649**
**Counsel for the Defendant.**