IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHEILA NICHOLSON, and<br>SHELLEY NICHOLSON, and<br>RICHARD HIRSTSUS | ) | |
| Plaintiffs, | ) | No. 05-1259L |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES OF AMERICA | ) | |
| Defendant | ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S RESPONSE TO PLAINTIFFS' SUR-REPLY**

This memorandum is submitted by Plaintiffs, Sheila Nicholson, Shelley Nicholson and Richard Hirstsus, in response to Defendant's Response to Plaintiffs' Sur-Reply.

Plaintiffs are in receipt of Defendant's Response to Plaintiffs' Sur-Reply, filed on June 6, 2007. In Defendant's Response, the Government asserts that it is entitled to summary judgment because the Government disagrees with Plaintiffs' arguments of fact and law. However, Defendant has not provided any new arguments to advance it's position that it is entitled to summary judgment as a matter of law. In fact, Defendant's Response does nothing but restate the Government's disagreement with Plaintiffs' position. For the reasons set forth below, Plaintiffs again request that this Court deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Motion for Partial Summary Judgment.

## I. VALIDITY OF THE INTERAGENCY PERFORMANCE EVALUATION TASK FORCE REPORTS

The Government's argument that the Interagency Performance Evaluation Task Force Reports ("IPET Reports") are not reliable and cannot be used as admissions of the United States

Army Corps of Engineers ("Corps") is insulting at best. *See* Defendant's Response to Plaintiffs' Sur-Reply, pp. 2-3. The Government not only relies upon these same reports, but also confesses the reliability of the IPET Reports for purposes of summary judgment in the Consolidated Statement of Undisputed Facts. "Given the related litigation ongoing in the Eastern District of Louisiana, the reliability of the IPET report is conceded for the purposes of the pending Motion for Summary Judgment only." *See* Consolidated Statement of Undisputed Facts, Defendant's Response to Plaintiffs' Proposed Facts (P 3.) at p. 3.

Additionally, it is absurd that the Government now asserts that the IPET Reports are not reliable for purposes of the Motion for Summary Judgment, yet relies upon the IPET Reports to support its factual arguments. *See* Consolidated Statement of Undisputed Facts, Defendant's Response to Plaintiffs' Proposed Facts, pp. 2, 5, 6,11,12, 18, 25, 26, 30, 33. The Government cannot have it both ways. The Government cannot assert in one document that Plaintiffs' reliance on the IPET Reports is misplaced while conceding reliability of the IPET Reports for the Government's factual claims, especially after agreeing to the IPET Reports reliability for summary judgment purposes.

Furthermore, although the Government argues that the footnotes in the IPET Reports support its position that the IPET Reports are unreliable, as they are not "the official position of the Army Corps of Engineers," it is important to note that the footnote is not a total disclaimer, and the Government fails to reveal what *is* "the official position" of the Corps. "This report is the independent opinion of the IPET and is **not necessarily** the official position of the U.S. Army Corps of Engineers." Defendant's Response to Plaintiffs' Sur-Reply, p. 2. Given the inconsistency of the Government's argument, this Court should disregard the Government's argument in its entirety.

## II. RULE 56(e) and (f)

As this Court is aware, there is an informal agreement between the parties that the central issues in this case would be presented to this Court through the Motion for Summary Judgment procedure. This agreement was made to further the interests of justice and contain unnecessary judicial, legal and expert expenses. Considering this understanding and goal, Plaintiffs previously suggested that the Government specify what documentary evidence, if any, it believes needs to be authenticated in order to ensure admissibility for a judicial proceeding. The Government has done this by asserting that the IPET Reports, as well as other evidence submitted, do not raise a factual dispute because the submissions consist of opinions unsupported by any factual evidence or they contain assertions by the property owners that have not been shown to be within their competence. See Defendant's Reply Memorandum to Plaintiffs' Motion for Partial Summary Judgment, pp. 19-20.

Because of the informal agreement between the parties, Plaintiffs did not obtain depositions or affidavits, however, Plaintiffs can obtain authority sufficiently reliable to support Plaintiffs' Motion for Partial Summary Judgment. See Affidavit by Plaintiffs' Counsel in support of Rule 56 (e) and (f), attached as Plaintiffs' Exhibit R.

Under Rule 56(e) and (f), if the IPET Reports and other exhibits are not in proper form for summary judgment purposes, Plaintiffs should be given the opportunity to supplement the current evidence in proper form, by obtaining depositions, answers to interrogatories, or affidavits.

Rule 56(e) of the U.S. Ct. Fed. Cl. states:

**(e) Form of Affidavits; Further Testimony; Defense Required.**

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

> affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 56(f) of the U.S. Ct. Fed. Cl. states:

**(f) When Affidavits Are Unavailable.**

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Consequently, should this Court find any validity to the Government's argument regarding reliance on the IPET Reports or other documentary evidence, Plaintiffs should be given the opportunity to supplement the evidence to assure admissibility for summary judgment purposes.

## III. INTERFERENCE WITH PROPERTY USE IS SUBSTANTIAL AND MEETS THE PERMANENCY REQUIREMENT UNDER RIDGE LINE

The Government continues to argue that Plaintiffs' claims do not meet the requirements outlined under Ridge Line because Plaintiffs cannot establish that the flooding of Plaintiffs' property will recur. See Defendant's Response to Plaintiffs' Sur-Reply (Dfts. Response), page 6 (citing Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003)). However, based on the current information released by the Army Corps of Engineers, recurrence is inevitable. According to the IPET Risk Assessment released June 20, 2007, Katrina was a 400-year storm, which has a .25

percent chance of recurring in any given year. Task Force Hope Status Report, US Army Corps of Engineers, *Corps Rolls Out Risk Analysis*, https://IPET.wes.army.mil. (June 20, 2007). Thus, according to the Corps' own reports, recurrence of flooding is inevitable, despite the contention of the Government. Id. "There is a 1 in 100 **annual** chance that roughly one-third of the city will be flooded with as much as six feet of water. For dozens of city blocks, the chance of significant flooding is twice as high." Whoriskey, Peter, *Corps Details New Orleans Flood Risk After Repairs*, Washington Post, June 21, 2007, at A02 (reporting on the IPET Risk Assessment released by the Corps, June 20, 2007) (citing *Army Corps of Engineers, IPET Risk and Reliability Report, Interactive Maps*, http://nolarisk.usace.army.mil/#map).[1] The interactive maps provided by the Corps' website shows the risk of flooding by area and by the potential feet of flooding, before and after Hurricane Katrina. Printouts of these interactive maps for New Orleans, including Lakeview, the Upper 9th Ward, the Lower 9th Ward, and the French Quarter/Garden District have been attached as Plaintiffs' Exhibit Q.

Moreover, Ridge Line requires that *the consequences* of the governmental interference be permanent. "A taking may be supported where a Government activity or project 'which is permanent in nature imposes on private property certain consequences which are themselves permanent, and . . . that their recurrence is inevitable even if only intermittent.'" Ridge Line, 346 F.3d at 1356 (citing Wilfong v. United States, 480 F.2d 1326, 1329 (Ct. Cl. 1973)). The Corps' defectively designed floodwalls imposed permanent and substantial consequences that have preempted Plaintiffs' right to the enjoyment of their property "for an extended period of time."

---

[1]Detailed maps and information for specific areas are available by clicking on the appropriate area on the maps then clicking on Download PDF Overlays.

Id. The flooding, as well as the consequences resulting from the flooding will continue so long as the floodwalls are inadequate. "After nearly two years of work, the Army Corps of Engineers revealed yesterday which New Orleans neighborhoods and blocks were the most vulnerable to flooding and which were the best protected. The report shows that despite considerable improvement, large swaths of the city are likely to be flooded in a major storm." Schwartz, John, *New Orleans Still at Risk, Army Data Show*, N.Y. Times, June 21, 2007 (reporting on the Risk Assessment released by the Corps on June 20, 2007) (citing *Army Corps of Engineers, IPET Risk and Reliability Report, Interactive Maps*, http://nolarisk.usace.army.mil/#map). supra, n.1.

Risk of future flooding is obviously the largest component in assessing the permanent consequences and diminution to Plaintiffs' property. Moreover, based on the Risk Assessment released by the Corps on June 20, 2007, flooding will inevitably recur, the only question is to what degree. However, it is the permanent damage that has already occurred, as a result of the Corps failure to properly construct floodwalls, and create a Congressionally authorized Hurricane Protection System that has caused and will continue to cause permanent damage to Plaintiffs' property. The permanent impairment of use and devaluation in property value will inevitably recur, as the Corps' reports continue to demonstrate. So long as the Hurricane Protection System remains inadequate, the flooding will continue as well as the consequences that accompany the flooding. "The levee system and the protection it provides will be a critical part of the recovery of New Orleans." Volume VII - The Consequences. Final Report of the Interagency Evaluation Task Force, VII-156 ("IPET Vol VII").

It is not simply the decrease in property value of the Plaintiffs' properties, but the long term, comprehensive devastation that has affected Plaintiffs' social and economic community as

a whole and has placed a significant and undue burden on the use and enjoyment of Plaintiffs' properties. Thus, whether there is substantial or permanent damage to Plaintiffs' property requires a more complete assessment than that proposed by the Government. Property or land value can be based upon many factors; however, what it boils down to is "[t]he price which the property would bring at a fair sale between parties dealing on equal terms." Union Nat. Bank of Pittsburgh v. Crump, 349 Pa. 339, 343, 37 A.2d 733(Pa. 1944). Many factors go into the assessment of property value, including, "the demand for the property and similar properties, taking into consideration economic conditions which depress market value in its true sense and detrimentally influence such demand

. . . ." Id.

In inverse condemnation cases, it is the governmental interference of the beneficial "use or possession" of property that is at issue. Eyherabide v. United States,170 Ct. Cl. 598, 345 F.2d 565, 568 ( 1965). Thus, it is the Plaintiffs' inability to utilize property as they have a legal right to do, such as transfer, sell, or rent said property, as well as the permanent diminution of property value, which is essential to the permanent consequence analysis.

In the case before this Court, the transfer or sale of property as well as the diminution of property value are intrinsically intertwined. What a prospective buyer will pay for property is based on a variety of factors such as location, usability of the property, marketability, location of schools, public transportation, community health and safety systems such as fire departments, police departments and hospitals. What determines whether many of these services are available is whether or not there is a tax base to support these public services. Thus, the tax base, or individuals who reside in a city and pay taxes, determine what level of public services are

available, if any. Consequently, whether there is a tax base to support public services and thus the city infrastructure is an integral part of the assessment of marketability and valuation of property.

Since the failure of the Hurricane Protection System in New Orleans, the population, the social infrastructure, and tax base in New Orleans have been decimated. IPET VII at VII-12. According to the Corps, the population in metropolitan New Orleans has decreased by 400,000, although it is recognized that the population decrease in the City of New Orleans is about 200,000. IPET VII at VII-2. This effect on the community tax base has had a significant negative impact on infrastructure and public services in New Orleans, as well as property values and marketability. Many religious congregations are not back to normal functioning, musicians are gone and restaurants are still not open, which has a significant effect on the economic recovery. IPET VII at VII-12. Many schools are still not open, many neighborhoods remain almost empty, public transportation and other services such as local police and fire departments, as well as hospitals remain inoperable and this will have "long-term, multi-dimensional, social consequences" which necessarily ties in with the marketability of property, and thus has permanent economic consequences. IPET VII at VII-148, 156.

In light of the information provided by the IPET Reports, it is clear that the devastation and damage from the failure of the Hurricane Protection System, as well as the inevitability of recurring flooding provides the biggest hurdle to the recovery of New Orleans. "Repopulation, recovery, and investment will be contingent in the faith people put into their community's ability to provide a safe place to live." IPET VII at VII-155. Without the assurance of safety, there will continue to be permanent impairment to the recovery efforts of New Orleans, and consequently,

the property of Plaintiffs. Thus, the value of Plaintiffs' property in New Orleans has permanently and substantially been affected by the Corps' failure to provide adequate flood protection before and since Hurricane Katrina.

## IV. MOTION FOR PARTIAL SUMMARY JUDGMENT

The Government continues to argue that the submissions filed by Plaintiffs fail to raise a factual dispute because there is no factual evidence in Plaintiffs' submissions. However, contained in the IPET Reports are the findings of the Corps, as well as statements of representatives of the Corps. Although the Corps' attorneys may not agree with the factual findings of the Corps, that does not negate nor reduce the significance of the Corps' opinions.

Even assuming everything the government lawyers claim is true, there is no factual dispute with regard to the Corps's factual determinations. The factual dispute lies solely with the attorneys for the Corps who are attempting to create material issues of fact where none exist, which belies the Government's entire argument in support of summary judgment.

The Corps' opinions are antithetical to the Government's legal position, yet wholly consistent with Plaintiffs'. Consequently, this Court must deny the Government's Motion for Summary Judgment and grant Plaintiffs' Motion for Partial Summary Judgment.

## V. CAUSATION

Donald Powell, Federal Coordinator for Gulf Coast Rebuilding testified before Congress and said "[a]s elected officials have said many times, the federal government is responsible for this hurricane damage because of the failure of the levee system." See Michael Kunzelman, *Official Blames LA. For Fund Shortfall*, L.A. Times, May 24, 2007, attached as Pl. Ex. K. (quoting Donald Powell, Federal Coordinator for Gulf Coast Rebuilding, during his testimony at

the hearing before the Senate Homeland Security Subcommittee on Gulf Coast Housing, 110th Cong. May 24, 2007. The hearing transcript will be forwarded as Pl. Ex. L, upon receipt.) Although the Government argues that because the Corps did not "change the natural course of water flow" there is no causal link. *See* Defendant's Response to Plaintiffs' Sur-Reply at p. 3 (citing Bunch v. Coachella Valley Water Dist., 935 P.2d 796 (Cal. 1997). In spite of the Government's contention, it was exactly that, the Corps construction and failure of the Hurricane Protection System which caused the flooding and permanent damage to Plaintiffs' property resulting in a taking under the Fifth Amendment. Donald Powell, the highest ranking government representative in charge of this issue, admitted to Congress that the United States caused this devastation.

## VI. CONCLUSION

It is unconscionable that the Government asserts both sides of the same argument. While utilizing the IPET Reports to support it's factual position, the Government simultaneously debases the IPET Reports' validity when offered to support Plaintiffs' factual position. What makes this more absurd is that the Government conceded the IPET Reports' validity for summary judgment purposes.

Regardless, assuming that this Court accepts the Government's argument, under Rule 56(e) and (f), Plaintiffs must be allowed to supplement the facts with depositions, answers to interrogatories, and affidavits.

The Corps' findings in the IPET Reports affirm Plaintiffs' position, while contradicting the Government's position. For these reasons and the reasons set forth in Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Sur-Reply, Plaintiffs' respectfully request that the

Motion for Partial Summary Judgment be granted and that Defendant's Motion for Summary Judgment be denied.

**Respectfully submitted,**

**LOWE, STEIN, HOFFMAN,**
**ALLWEISS & HAUVER, L.L.P.**

**MITCHELL J. HOFFMAN (6896)**
**MICHAEL R. ALLWEISS (2425)**
**JEFFREY M. HOFFMAN (29253)**
**701 Poydras Street, Suite 3600**
**New Orleans, Louisiana 70139-7735**
**Telephone: (504) 581-2450**
**Facsimile: (504) 581-2461**
**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I certify that I have on this 3 day of July, 2007, served a copy of the foregoing pleading on counsel for all parties to this proceeding by facsimile transmission, hand delivery, or by United States mail, properly addressed, and first class postage prepaid.

MITCHELL J. HOFFMAN