## UNCONTESTED FACTS

1.

On August 29, 2005, the eye of Hurricane Katrina passed approximately twenty miles east of New Orleans. Pltfs' Ex. B at 7-8; Def's Ex. B at 7-8.

2.

The IHNC and its lock were incorporated into the Federal navigation project, the Gulf Intracoastal Waterway (GIWW) and continues to serve as apart of that navigation system to the present. Def's Ex. A at ¶ 6.

## PLAINTIFFS' PROPOSED FACTS

**3. (P)**

**Four I-wall failures that resulted in breaches and very significant flooding occurred in the morning of August 29, 2005. Pl. Ex. A at p. I-30 (p. 65); Pl. Ex. I at p. I-66 (p.96).**

Disputed as stated. This statement lacks proper context and Plaintiffs' use of the general term "failure" lacks specificity. The report of the Interagency Performance Evaluation Team ("IPET"), the source upon which Plaintiffs' assertion rests, gives a more specific description of what may have occurred in the outfall canals:

> Four breaches, all in the outfall canals and IHNC and all involving I-walls, occurred before water levels reached the top of the floodwalls. All were caused by foundation failures induced by the formation of a gap along the canal side of the floodwall. All of these structures were built over a layer of marsh sediments, in two cases underlain by clays and in the other two underlain by relict beach sand deposits. The subsurface conditions dictated the specific mechanics that, coupled with the high hydrostatic pressures introduced to depth by the gap along the fact of the sheet pile, led to the instability and failure. The sites underlain by sand experienced significant seepage and in one case a massive piping of subsurface sand from under the levee to the protected side, undermining the floodwall. The formation of the gap and the associated hydrostatic pressures introduced at depth resulted in a significant reduction of the factor of safety of the structure. This failure mechanism, in particular the gap formation, was not considered in the original design of these structures.

Defendant further notes that while the Plaintiffs have adduced the IPET report as evidence supporting their factual assertions, the portion offered by Plaintiffs as Exhibit A, is, by its terms, only a draft and subject to revision. It follows that the conclusions of the report are not entirely reliable as evidence. Additionally, the IPET report has not been endorsed by the United States, the Corps of Engineers, which commissioned it, or by any other governmental or private sector organization. The citation of it by the United States in this document is solely for the purpose of revealing that Plaintiffs' proffered facts are not entirely supported by Plaintiffs' own evidence; it is not intended to be and should not be construed as an endorsement of the IPET report or the contents thereof.

Given the related litigation ongoing in the Easter District of Louisiana, the reliability of the IPET report is conceded for the purposes of the pending motion for summary judgment only.

4. (P)

**The I wall ~~failures~~ resulted in breaches of the walls and levees. Pl. Ex. A at p. I-30 (p. 65); Pl. Ex. I at p. 47 (p. 77) and I-66 at (p. 96).**

Disputed as stated. See Response to No. 1.

5. (P)

**~~The breaches caused by the I wall failures flooded the City of New Orleans.~~ Pl. Ex. A at p. I-30 (p. 65); Pl. Ex. I at p. 47 (p. 77).**

This statement is disputed because it is misleading. It implies that the four breaches on the three canals were responsible for the entire flooding of New Orleans. This is untrue. The IPET report, upon which Plaintiffs' allegation rests, states that there were fifty other breaches in the area which, along with rainfall, contributed to the flooding of the city. Pltfs' Ex. A at I-7.

6. (P)

**Nearly 80% of the city was inundated by flood waters. Pl. Ex. A at p. I-30 (p.65); Pl. Ex. I at p. I-48 (p. 78).**

Defendant disputes this statements because it implies that 80% of the city was flooded solely by waters flowing through breaches on the three canals. See, e.g., Pltfs' Ex. A at I-7, I-36. According to Plaintiffs' proffered evidence this is untrue. See Response to No. 3.

7. (P)

**The flood waters caused ~~permanent~~ damage to property in New Orleans. Def. Motion for Summary Judgment at p. 18. Pl. Ex. G at pps. 22, 25.**

Defendant disputes this statement because the damage to Plaintiffs' property is remediable and not permanent. Additionally, Plaintiffs have offered no evidence to support this statement.

8. (P)

**The cause of the permanent damage was defectively designed flood walls. Pl. Ex. G at p. 11.**

Defendant disputes this statement for the reasons set forth in response to statements number 3 and 5.

9. (P)

**~~The U.S. Army Corps of Engineers was responsible for the design and construction of the flood walls.~~ Pl. Ex. A at p. I-16 (p. 51); Pl. Ex. I at I-26 (p. 56); Pl. Ex. C at 12-3.**

Defendant disputes this statement because it was only responsible for the design and construction of some of the floodwalls. Def's Ex. A at ¶ 19.

**10. (P)**

**~~A category three hurricane under the Saffir Simpson Scale is roughly equivalent to the standard project hurricane (SPH) that the Corps' was directed to consider in designing the flood walls.~~ Pl. Ex. A at p. I-16 (p. 51); Pl. Ex. I at I-25-26 (pp. 55-56).**

Defendant denies this statement. The SPH was a hypothetical storm developed before the use of the Saffir-Simpson scale. The hypothetical storm had a forward speed of 6 knots, maximum wind velocity of 100 miles per hour, a central pressure of 27.6 inches and a radius of 30 nautical miles. Def's Ex. A.

11. (P)

**The storm surge created by Katrina was within project design. Pl. Ex. C at p. 12-12, 12-13.**

Defendant dispute this statement because it is not accurate. The IPET report, relied upon by Plaintiffs, notes that "Hurricane Katrina generated water levels that for much of the system significantly exceeded the design criteria." Pltfs' Ex. A at 1-6.

12. (P)

**~~The breaches occurred before water levels exceeded project design.~~ Pl. Ex. A at p. I-7 (p. 42), I-30 (p. 65); Pl. Ex. I at I-65 (p. 95); Pl. Ex. E at p. 2.**

Defendant disputes this statement. While the IPET report, which was relied upon by Plaintiffs, does state that the breaches in the three canals occurred before the walls were overtopped, it also states that breaches "along the west side of the IHNC" were induced by overtopping. Pltfs' Ex. A at 7. The statement also fails to reflect that the floodwalls were not designed to withstand a storm surge of the magnitude caused by Hurricane Katrina.

13. (P)

**The failure mechanism of the flood walls was not considered in the original design of the structures. Pl. Ex. A at p. I-39 (p.74); Pl. Ex. I at I-59 (p. 89).**

<u>See</u> Response to No. 1.

14. (P)

~~**Had the Corps designed flood walls consistent with the Corps statutory obligation, the flooding in New Orleans would have been substantially less.**~~

Defendant disputes this statement. Plaintiffs have not offered any evidence that the flooding of New Orleans would have been less if the Corps had complied with the alleged statutory obligation. Indeed, if the floodwalls had not been built in the 1990s, there would likely have been greater flooding because the storm surge levels in the canals were higher than the heights of the levees. Accordingly, water would have flowed unimpeded over these levees.

**15. (P)**

**Two- thirds (2/3) of the flooding of the City of New Orleans was attributable to water flowing through the breaches. Pl. Ex. A at p. I-7 (p. 42); Pl. Ex. I at I-3 (p. 33).**

This statement is denied. See Response to No. 3.

16. (P)

~~The Corps could foresee that the flood walls would break under conditions they were designed to withstand.~~ **Pl. Ex. C at p. 12-7.**

Defendant disputes this statement because it is not a fact but a legal conclusion. The walls were not designed to protect against a storm sure of the magnitude created by Hurricane Katrina.

17. (P)

**~~The Corps could foresee that, in the event of such a breach, Plaintiffs property would be inundated and devalued by the absence of secure protection.~~ Pl. Ex. C at p. 12-10.**

Defendant disputes this statement because it is not supported by any probative or admissible evidence.

18. (P)

**The basic flaws in design of the levee protection system was first recognized over two (2) decades before Hurricane Katrina. Pl. Ex. E at p. 12-7.**

Defendant disputes this statement. The IPET report, one of Plaintiffs' exhibits, states that "[t]here was no evidence of government or contractor negligence or malfeasance. With the exceptions noted below, the system was generally built as designed, and design approaches were consistent with local practice." Pltfs' Ex. A at I-5.

19. (P)

**The Corps recognized problems with the design of these structures years before Hurricane Katrina. Pl. Ex. C at p. 12-14.**

Defendant disputes this statement. Plaintiffs have not produced any factual evidence to support this statement.

20. (P)

~~The storm of the size and strength of Katrina was predictable.~~

This statement is denied. Plaintiffs have not provided any evidence that this is true. The objective facts of this case, as found in Defendant's Exhibit B and Plaintiffs' Exhibit B, show that Hurricane Katrina was the fourth strongest hurricane ever recorded in the Atlantic (later the sixth strongest after Hurricanes Rita and Wilma surpassed it) and had the largest storm surge of any storm to hit the New Orleans area. Def's Ex. B at 6, Pltfs' Ex. B at 6.

**21. (P)**

**~~All of the conditions responsible for the breaches were known and foreseeable in advance of these failures.~~ Pl. Ex. F at p. 5.**

Defendant disputes this statement. See Response to Nos. 14-17.

22. (P)

~~These were predictable failures.~~ **Pl. Ex. F at p. 5.**

Defendant disputes this statement. The only backing Plaintiffs have for this statement are the opinions of one author, unsupported by any factual evidence, that were incorporated into the report of the Independent Levee Investigation Team (ILIT). Further, the actual phrase used by the author was the paradoxical statement that these were "predictable surprises." Pltfs' Ex. C at 12-10; Pltfs' Cross Motion at 12.

23. (P)

~~In 1990, the Vicksburg office of the Corps of Engineers noticed design problems but did nothing.~~ Pl. Ex. E.

Defendant disputes this statement because Plaintiffs' do not specify what the alleged "design problem" was.

24. (P)

**The Corps knew, could and should have foreseen, that in the event of a major hurricane, the levees would fail resulting in catastrophic human suffering, loss of life and property loss. Pl. Ex. E at p. 1.**

Defendant denies this statement. <u>See</u> Responses to Nos. 3-24.

25. (P)

**The Corps admitted that the probability of failure of flood walls and some sections of levees were high, and there was a great potential for serious consequences because of the large population and extensive property being protected by the structures. Pl. Ex. A at p. I-39 (p. 74); Pl. Ex. I at I-59 (p. 89).**

Defendant disputes this statement. It was taken out of context from Plaintiffs' cited source. The IPET report notes that "the risk prior to Katrina was significant, in part, because New Orleans is mostly below sea level . . . ." Pltfs' Ex. A at 1-39.