26. (P)

~~**An extraordinary storm did not cause the damage, but rather, a known design failure did.**~~ Pl. Ex. A at p. I-39 (p. 74); **Pl. Ex. I at I-59 (p. 89).**

Defendant denies this statement. The clear evidence establishes that it was the storm surge from Hurricane Katrina that caused flooding in New Orleans. Def's Ex. B at 9-10; Pltfs' Ex. A at I-6; Pltfs' Ex. B 9-10.

27. (P)

~~The property damage to the property in New Orleans was foreseeable and foreseen.~~ **Pl. Ex. C at p. 12-14.**

Defendant disputes this statement for the reasons stated above. See Response to Nos. 3-24.

28. (P)

**The damage caused by the flooding in New Orleans as a result of the breaches in the flood walls was induced more by the Corps of Engineers actions than by an extraordinary natural phenomenon.**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that the flooding of New Orleans was due to actions of the Corps.

29. (P)

**~~But for the defective designs of the flood walls, damage to New Orleans would have been minimal.~~**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that the flooding of New Orleans would have been minimal but for the allegedly "defective design" of the flood walls.

Indeed, the meteorological evidence show that the level of water from the storm surge would have overtopped all of the levees on the three canals if the floodwalls had not been built, so the amount of flooding could have been even greater in that event.

30. (P)

**~~The Corps' defectively designed the flood walls imposed consequences that have preempted Plaintiffs' right to enjoyment of their property for an extended period of time.~~ Def. Motion for Summary Judgment at p. 18; Pl's Ex. G pps. 22, 25.**

Defendant disputes this statement because it erroneously assumes that the Corps defectively designed the floodwalls and also fails to reflect that Plaintiffs have not been denied use of their property. Plaintiffs may have, at most, sustained structural damage which is repairable and there is no evidence that any damage will recur in the future. Rather, the Corps has taken action to prevent the type of breaches that occurred in the wake of Hurricane Katrina. See Def's Ex. C at 4-5; Pltfs' Ex. A at I-iii, I-39.

31. (P)

~~Plaintiffs cannot acquire the fair values for their property because of the perceived lack of capable protection provided by the flood walls.~~ Pl. Ex. H *in globo*.

Defendant disputes this statement. Plaintiffs have not established it with any evidence.

32. (P)

~~The Corps' designed flood walls has created a safety hazard for property in New Orleans.~~ Pl. Ex. A at p. I-39 (p. 74); Pl. Ex. I at p. I-56 (p. 86) .

Defendant disputes this statement. There is no evidence to support it.

**33. (P)**

**~~The safety hazard so created has caused permanent damage.~~ Pl. Ex. A at p. I-39 (p. 74); Pl. Ex. I at p. I-56 (p. 86) .**

Defendant disputes this statement because it is not an established fact. Plaintiffs have not introduced any evidence that there is a safety hazard. In fact, the evidence suggests otherwise. See Def's Ex. C at 4-5; Pltfs' Ex. A at I-iii. I-39.

34. (P)

**The flooding was ~~the direct, natural and probable~~ result of an authorized activity of the Corps of Engineers.**

Defendant disputes this statement. The evidence does not support such a conclusion. The flooding was caused by a natural event, i.e. storm surge, which was beyond the capability of the hurricane protection system to prevent.

34a. (P)

"As elected officials have said many times, the federal government is responsible for this hurricane damage because of the failure of the levee system."

Michael Kunzelman, *Official Blames La. For Fund Shortfall*, L.A. Times, May 24, 2007, Attached as Pl. Ex. K. (quoting Donald Powell, Federal Coordinator for Gulf Coast Rebuilding, during his testimony at the Hearing before the Senate Homeland Security Subcommittee on Gulf Coast Housing, 110 th Cong. May 24, 2007, the transcript will be forwarded as Pl. Ex. L, upon receipt.)

## DEFENDANT'S PROPOSED FACTS

35. (D)

**The Corps' involvement in hurricane protection for the City of New Orleans has been limited. Def's Ex. A at ¶¶ 4-8.**

Contested. This is a conclusion, not a fact.

36. (D)

**The Corps' involvement in hurricane protection for the City of New Orleans is of relatively recent origin. Def's Ex. A at ¶¶ 4-8.**

Contested. This is a conclusion, not a fact.

37. (D)

**Levees to protect New Orleans from flooding from a storm surge resulting from hurricanes or tropical events have long been in existence. Def's Ex. A at ¶ 8.**

Contested. This is a conclusion, not a fact.

38. (D)

**The construction of the levees was in many cases undertaken by State and Local agencies, not by the Corps itself. Def's Ex. A at ¶¶ 5-7.**

Statement is not material.

39. (D)

**The responsibility of operating and maintaining the levees after their construction rested with State and Local agencies, not by the Corps itself. Def's Ex. A at ¶ 15,19; Pltfs' Ex. C at 12-1.**

Statement is not material. The Corps was responsible for design and construction of the floodwalls. The design problems caused the majority of flooding in New Orleans. The reference to levees is misleading.

40. (D)

**The 17th Street Canal was initially constructed as a component of a railroad project. Def's Ex. A at ¶ 5.**

Statement is not material.

41. (D)

**The London Avenue Canal was initially a privately constructed avenue for local commerce. Def's Ex. A at ¶ 4.**

Statement is not material.

42. (D)

**The Inner Harbor Navigational Canal ("IHNC") was built by the local government as a toll facility to allow navigation between the Mississippi River and Lake Pontchartrain. Def's Ex. A at ¶ 6.**

Statement is not material.

43. (D)

**The 17th Street and London Avenue Canals were adapted by local governmental authorities to serve as interior drainage facilities, a use continued by local governments to the present. Def's Ex. A at ¶ 7.**

Statement is not material.

44. (D)

**The earthen base of a flood protection system is called a levee. Def's Ex. A ¶ 7.**

Contested, it is unclear to what the words "flood protection system" refer. Otherwise, a levee has been so defined.

45. (D)

**A floodwall is a wall attached to a length of steel that has been driven into the ground.**

Denied, a floodwall has many components, one of which is a length of steel and sometimes, a concrete wall.

46. (D)

**The Corps' involvement on the canals in question was primarily limited to the design and placement of floodwalls on top of some of these already existing levees. Def's Ex. A at ¶¶ 7, 15 and 19.**

Denied, the Corps was responsible for construction and design of the floodwalls.

47. (D)

**Hurricane Katrina was "an extraordinarily powerful and deadly hurricane that carved a wide swath of catastrophic damage . . . ." Def's Ex. B at 1.**

Statement is not material. It is taken out of context. The floodwall failures was the cause of most the damage to the City of New Orleans.

48. (D)

**As it passed through the open waters of the Gulf of Mexico, Hurricane Katrina was rated as a Category 5 storm on the Saffir-Simpson hurricane scale. Def's Ex. B at 1.**

Statement is not material. The storm hit New Orleans with winds less than category 3 strength.

49. (D)

**~~At the time Hurricane Katrina struck New Orleans it was still a powerful "high-end Category 3 hurricane . . . ."~~ Def's Ex. B at 6.**

This is denied. The actual quote referred to by the U.S. is "the aircraft data from 29 August indicate that the structural changes in Katrina were associated with its rapid weakening to a high end Category 3 hurricane just before landfall in Louisiana." Def Ex. B at p. 6; Pls Ex. B at p. 6. Landfall in Louisiana was at Buras, Louisiana, some 50 miles south of the city.

The winds from Hurricane Katrina at the time it struck New Orleans were not Category 3 strength. Pl's Ex. B at p. 8.

50. (D)

**The size and strength of the storm created a storm surge of ten to fourteen feet along the southern shore of Lake Pontchartrain, ~~and into the three canals at issue in this case~~.** Def's Ex. B at 9.

A storm surge of ten to fourteen feet was created along the southern shore of Lake Pontchartrain, but did not enter the three canals at issue but all floodwalls on the three canals failed before water levels achieved the height set forth. The maximum height in the 17th Street Canal was 7 feet. The London Avenue floodwalls were never overtopped. Pl's Ex. A at p. I-7.

51. (D)

**The floodwalls installed in the interior drainage canals in the 1990s were intended to increase the level of protection provided for New Orleans against hurricanes. They were not designed to prevent all damage from hurricanes or flooding but only that attributable to the SPH. Without the protection afforded by the floodwalls, the flooding of New Orleans that occurred as a result of the storm surge of Hurricane Katrina would likely have been even greater since the surge levels were higher than the tops of the preexisting levees. Without the floodwalls, flood waters would have flowed without resistance into the flooded areas at issue in this case.**

Contested. This is a conclusion, not a fact. To compare possible damage without floodwalls is inappropriate since the Defendant was charged with designing and constructing floodwalls which were supposed to withstand water levels that they experienced before, during and after Katrina.

RESPECTFULLY SUBMITTED:

LOWE, STEIN, HOFFMAN, ALLWEISS
& HAUVER, L.L.P.

BY: ______________________________

MITCHELL J. HOFFMAN, Trial Attorney
MICHAEL R. ALLWEISS
JEFFREY M. HOFFMAN
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139-7735
Telephone: (504) 581-2450
Attorneys for the Plaintiffs

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

BY: ______________________________

FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Counsel for the Defendant.